761 So.2d 221 (2000)
Michael WHITE a/k/a Michael E. White, Appellant,
v.
STATE of Mississippi, Appellee.
No. 98-KP-00084-COA.
Court of Appeals of Mississippi.
March 7, 2000.
Certiorari Denied June 29, 2000.
*222 Lewis J. Weeks, Jr., Wesson, Attorney for Appellant.
Office of the Attorney General by Jean Smith Vaughan, Attorney for Appellee.
EN BANC.

*223 ON MOTION FOR REHEARING
PAYNE, J., for the Court:
¶ 1. The original opinion is withdrawn and the following is substituted therefor. The motion for rehearing is denied.

PROCEDURAL HISTORY
¶ 2. Michael White was convicted in the Copiah County Circuit Court of one count of sale of cocaine in violation of Miss.Code Ann. § 41-29-142 (Rev.1993). Since White was also convicted of selling cocaine within 1,500 feet of a church in violation of Miss.Code Ann. § 41-29-139 (Rev.1993), the trial judge gave White a sixty-year sentence. In our original opinion we affirmed White's conviction, but reversed his sentence in light of the Mississippi Supreme Court decision of Davis v. State, 724 So.2d 342 (Miss.1998). In this modified opinion, we do the same.

FACTS
¶ 3. On December 17, 1996, Levon Turner, an informant acting undercover for the Hazlehurst Police Department, engaged in a purchase of crack cocaine from Michael White. Prepared for an undercover purchase of drugs with county money and wired with a body microphone by Officer Ron Crew, Turner had a prebuy meeting with Crew and Officers Keith Mangold and Chris Stanley. Turner was searched by Crew to make sure there was no contraband on his person.
¶ 4. Officer Crew drove Turner to a street corner near the targeted area and dropped Turner at that location. When Turner left Crew's automobile, Turner did not stay in Crew's sight for very long, but Crew testified that he was able to provide auditory surveillance. Officers Mangold and Stanley did not maintain visual surveillance, but were close to the location to provide backup.
¶ 5. Turner testified that he went to an apartment where he found Michael White and asked him what he could get for thirty-five, and White replied he could get two for forty, meaning two rocks of cocaine for forty dollars. The exchange was made, and Turner returned to Crew's vehicle where he gave Crew two rocks of crack cocaine. Turner then returned to the police station with the officers. After returning to the police station, Officer Mangold searched Turner and found crumbs of cocaine in Turner's left coat pocket.
¶ 6. During the State's case-in-chief, the distance between the apartment and church of 700 feet, was established through measurement of the distance by Officer Crew who had worked as a surveyor in the 1970's and 1980's.
¶ 7. The defense placed several witnesses on the stand who testified that White did not live in the apartment where the crack cocaine was sold. Also, George Turner, the confidential informant's brother, testified for the defense. George Turner testified that his brother had used drugs, and had been committed to a rehabilitation clinic and to the State Mental Hospital. He testified that in his opinion his brother was not a truthful person.
¶ 8. After deliberating, the jury found White guilty as charged.

ARGUMENT AND DISCUSSION OF THE LAW

STANDARD OF REVIEW
¶ 9. White raises three issues for this Court's review (1) the trial court was incorrect in failing to grant a judgment notwithstanding the verdict due to the overwhelming weight of the evidence; (2) the State was allowed to strike jurors because of their race, which violated Batson; and (3) White's sentence of sixty years constituted cruel and unusual punishment and should be set aside.
¶ 10. White argues that the trial court erred in failing to grant a judgment notwithstanding the verdict as the jury's verdict was against the overwhelming weight of admissible evidence. White improperly combines two distinct legal issues. *224 The standard for reviewing denial of a new trial goes to the weight of the evidence and the standard for reviewing the denial of a JNOV is whether or not the evidence was sufficient to warrant such and whether fair-minded jurors could have arrived at the same verdict. The standard for a JNOV is not whether it was against the overwhelming weight of the evidence.
¶ 11. In White's first issue we address his post-trial motion for judgment notwithstanding the verdict.
In appeals from an overruled motion for JNOV the sufficiency of the evidence as a matter of law is viewed and tested in a light most favorable to the State. The credible evidence consistent with McClain's guilt must be accepted as true. The prosecution must be given the benefit of all favorable inferences that may be reasonably drawn from the evidence ... We are authorized to reverse only where, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty.
McClain v. State, 625 So.2d 774, 778 (Miss. 1993) (citations omitted).
¶ 12. Our standard of review regarding a motion for new trial is stated in McClain:
Moreover, the challenge to the weight of the evidence via motion for a new trial implicates the trial court's sound discretion. Procedurally such challenge necessarily invokes Miss. Unif.Crim.R. of Cir. Ct. Prac. 5.16. New trial decisions rest in the sound discretion of the trial court, and the motion should not be granted except to prevent an unconscionable injustice. We reverse only for abuse of discretion, and on review we accept as true all evidence favorable to the State.
McClain, 625 So.2d at 781 (citations omitted).
¶ 13. The next issue White brings for our review regards the case of Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Our standard for reviewing Batson questions is set forth in Lockett v. State, 517 So.2d 1346 (Miss. 1987). In Lockett the court said:

Batson clearly places upon the trial court the duty to determine whether purposeful discrimination has been shown ... Batson states that "ordinarily," a reviewing court should give the trial court "great deference." ... [which] has been defined in the Batson context as insulating from appellate reversal any trial findings which are not clearly erroneous.
Lockett, 517 So.2d at 1349-50 (citations omitted) (emphasis added). In his brief White mentions specific jurors who were struck from the panel allegedly due to their race. In this opinion we examine the reasons each of these persons was contested as a juror and review their situations in accordance with Batson rules stated above.
¶ 14. Regarding the third issue of White's sentence's being cruel and unusual, in the present case, Miss.Code Ann. § 41-29-139(b)(1) (Rev.1993) states if convicted of selling drugs within 1,500 feet of a church, "such person may, upon conviction, be imprisoned for not more than thirty (30) years and shall be fined not less than Five Thousand Dollars ($5,000.00) nor more than One Million Dollars ($1,000,000.00), or both." Further, for violation of this code section Miss.Code Ann. § 41-29-142(1) allows the sentence to be "a term of imprisonment or a fine, or both, of up to twice that authorized by Section 41-29-139(b)."
¶ 15. This Court looks for guidance to the recent cases of White v. State, 742 So.2d 1126 (Miss.1999) and Davis v. State, 724 So.2d 342 (Miss.1998) which require trial judges, using their discretion, to issue appropriate sentences in each individual case. Accordingly, we now reverse and remand the sentencing issue to the trial *225 court for re-sentencing in compliance with White and Davis.

ANALYSIS OF THE ISSUES PRESENTED
¶ 16. We cite White's issues verbatim from his brief, while making the distinction addressed above with reference to White's misstatement of the issues in this case.

I. WHETHER THE TRIAL COURT'S FAILURE TO GRANT A JUDGMENT NOTWITHSTANDING THE VERDICT WAS IMPROPER DUE TO THE OVERWHELMING WEIGHT OF THE EVIDENCE.
¶ 17. With this issue, White mistakenly confuses the standard for reviewing the trial court's failure to grant a judgment notwithstanding a verdict with the trial court's standard for granting a new trial. As stated before, the standard for reviewing the denial of a JNOV is whether or not the evidence was sufficient to warrant such and whether fair-minded jurors could only have found the defendant not guilty. The standard for reviewing the denial of a new trial is whether or not the evidence was against the weight of the evidence. However, White's arguments center on the sufficiency of the evidence which is challenged by a motion for a JNOV.
¶ 18. Here, White raises three grounds for reversal of the trial court's denial of motion for JNOV: (A) the confidential informant, Levon Turner, was not a reliable witness; (B) the audiotape was not properly authenticated and, therefore, was inadmissible; and (C) there existed a question as to the exact location of the drug buy.

A. The confidential informant was not a reliable witness

¶ 19. First, White raises the issue of Levon Turner's reliability as a witness. Though several facts in the record cast doubt as to Turner's reliability, the defense was given opportunity to impeach Turner's credibility to cast doubt on Turner's reliability.
¶ 20. It is for the jury and not for this Court to weigh all evidence and testimony and to determine what weight to give each witness's testimony. Absent any showing that reasonable persons could have found beyond a reasonable doubt to the contrary, the judgment of conviction will be upheld. Taylor v. State, 656 So.2d 104, 107-08 (Miss.1995).
¶ 21. In the present case, the jury was presented with Turner's testimony, as well as much other evidence and testimony that supported the conviction. Therefore, with regard to the lower court's denial of JNOV and in accordance with the applicable standard of review, the issue of Turner's reliability as a witness is not so questionable as to warrant a reversal by this Court.
¶ 22. White's motion for rehearing raises an entirely new issue relating to the trial court's excluding the testimony of Carlos Green, a person who would have testified to the confidential informant's reputation. The purpose of a motion for rehearing is to provide this Court an opportunity to correct any errors on issues already presented and decided. See M.R.A.P. 40(a). A rehearing does not encompass a new set of arguments; therefore, it was improper for White to raise a new legal or factual argument in his motion for rehearing.
¶ 23. In the original brief submitted before this Court, White never addressed Carlos Green. The record did reflect right before the defense rested that they asked that the proffer of Carlos Green's testimony be marked for identification; however, the defense never asked for the trial court to act further and the proffer was never entered into the record. We were in error in mentioning this in the original opinion. We decline to address this issue.

B. The audiotape was not properly authenticated and was therefore inadmissible

¶ 24. Second, White argues that the audiotape was improperly introduced at trial because the voices on the recording *226 were not identified. During the testimony of Officer Crew, a tape of the alleged drug transaction was played before the jury. The testimony of Officer Crew is as follows:
Q. How do you know he made contact with an individual?
A. By listening to the conversation on the transmitter.
Q. You could hear Levon?
A. Right.
Q. You could hear another individual?
A. Right.
Q. After the contact was made with that individual, what happened?
A. He walked to another residence, made contact with a person there, no transaction occurred, and walked to another residence.
Q. What do you mean by when you say no transaction occurred?
A. There was no conversation or speak of any money or drugs or anything of that nature.
Q. What happened at the third residence he went to?
A. He walked to the third residence, knocked on the door and made contact with the guy who was identified as Michael White.
Q. And were you recording this transmission at this time?
A. Yes, sir.
Q. Were you listening to the transmission at this time?
A. Yes, sir.
Q. Do you have a copy of the recording of that transaction when it was played at the third residence you were talking about?
A. Yes, sir, I do.
* * * *
Q. Have you had an opportunity to listen to that tape today?
A. When I made the copy of it, yes, sir.
Q. Is it any change, altercation, or anything on that tape when it was made December 17th?
A. No, sir.
MR. ARRINGTON: Your Honor, at this time I would ask the jury be allowed to listen to the tape.
MS. STAMPS: Objection, Your Honor. Proper foundation has not been laid.
THE COURT: I'll overrule your objection. I'll allow the tape to be played for the jury.
(TAPE WAS PLAYED FOR THE JURY.)
¶ 25. Before evidence may be admitted at trial, it must first be relevant. Stromas v. State, 618 So.2d 116, 118 (Miss. 1993) (citing M.R.E. 401). Once the trial court determines the evidence is relevant, it must then be properly authenticated. Stromas, 618 So.2d at 118 (citing M.R.E. 901). "A tape recording of a sale of a controlled substance is relevant evidence at the trial of the person charged with making that sale." Martin v. State, 724 So.2d 420 (¶ 11) (Miss.Ct.App.1998) (citing Middlebrook v. State, 555 So.2d 1009, 1013 n. 6 (Miss.1990)).
¶ 26. "Once relevancy is determined, for the tape recording to be properly admitted the State must present evidence `sufficient to support a finding that the matter in question is what its proponent claims.'" Martin, 724 So.2d at 422 (¶ 12) (quoting Stromas, 618 So.2d at 119 (quoting M.R.E. 901)). "The State may prove that the tape recording is, in fact, a recording of [White] by `opinion based upon hearing the voice at any time under the circumstances connecting it with the alleged speaker.'" Martin, 724 So.2d at 422 (¶ 12) (quoting Stromas, 618 So.2d at 119 (quoting M.R.E. 901(b)(5))).
¶ 27. In Martin, the appellant argued that error occurred when the audiotape was introduced into evidence and heard by the jury before his voice was ever identified. Martin, 724 So.2d at 422 (¶ 13). During the trial, the authenticating officer *227 could not identify Martin's voice. Id. Later when the informant testified, the informant stated that he had known Martin for approximately eight years and was familiar with his voice. Id. After Martin gave a voice exemplar, the informant testified that his was the same voice which he heard on the audiotape. Id.
¶ 28. This Court found in Martin that the authenticating officer's failure to identify Martin's voice did not render the tape inadmissible "as there was `evidence sufficient to support a finding that the matter in question is what its proponent claims.'" Id. at 423 (¶ 14) (quoting M.R.E. 901). However, we found that at the time the audiotape was introduced, the audio was only admissible to prove the occurrence of the drug sale. Id. The audiotape, at that time, did not prove Martin's involvement. Id. Later in the trial of Martin, the confidential informant identified Martin's voice on the audio tape. Id. at 423 (¶ 15). This Court held that "the informant ... provided the `missing link' which admitted the evidence for the purpose of establishing Martin's involvement in the drug transaction." Id.
¶ 29. In the Mississippi Supreme Court case of King v. State, 530 So.2d 1356, 1358 (Miss.1988), King argued that the audiotape had not been properly authenticated and that his voice had not been identified. The officer who monitored the transmission as it was being recorded testified that the audiotape accurately represented the conversation he heard and recorded. Id. The officer did not identify King's voice, but did identify the undercover agent's voice. Id. The Mississippi Supreme Court found that the audiotape recording "was in fact that which the prosecution claimed it to be, to-wit: an accurate recording of the verbal communications Agent Gibbs [the undercover agent] had with another person at the time, place and occasion in question." Id. (citing M.R.E. 901(a)). The court found the fact that the officer who overheard the exchange did not identify King's voice was beside the point because the agent who took part in the transaction later testified "that King was the person in the house with whom he had the communications which reflected the marijuana sale." Id.
¶ 30. In the case sub judice, the principal players on the audiotape were Turner and White. Officer Crew identified Turner's voice, and Turner supplied the "missing link" by testifying that White was the person who sold him crack cocaine that day. We find the audiotape was properly authenticated.

C. There existed a question as to the exact location of the drug buy

¶ 31. Third, White argues the exact location of the drug buy is not known, since Officer Ron Crew could not recall the exact location without the assistance of Turner, whom White alleges is unreliable. From a review of the record and the briefs, it appears the exact location is not actually at issue as the jury was left to make their own conclusions. Officer Crew testified he did not actually see the transaction take place; however, he did properly measure the distance from the church to the house where the sale allegedly took place, which measure turned out to be a distance of 700 feet.
¶ 32. White contests the reliability of Turner's identification of this particular house. However, the jury was ultimately left to draw their own conclusions regarding the location and whether they believed it was within the required 1,500 feet for this crime. Further, regardless of where White lived, the charge was sale of cocaine, and there is no requirement the sale be transacted at one's own home. Accordingly, this point is without merit and need not be addressed further.
¶ 33. A motion for JNOV challenges the legal sufficiency of the evidence supporting the guilty verdict. Here, White raises several questions concerning whether some of the evidence and testimony admitted at trial level were proper, which consequently could go directly to the sufficiency of evidence *228 to support the guilty verdict. However, these are questions the jury decided in the trial court, and as such this Court will not disturb.
¶ 34. Wetz v. State, 503 So.2d 803, 808 (Miss.1987), says this Court is authorized to reverse only where, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could not find the accused guilty. Here the evidence was sufficient to support the jury's verdict. The trial court's refusal to grant a JNOV should be affirmed.

II. WHETHER THE VERDICT AND SENTENCE SHOULD BE REVERSED DUE TO THE STATE'S MISUSE OF PEREMPTORY CHALLENGES IN REMOVING POTENTIAL BLACK JURORS.
¶ 35. During the jury selection process, White made a motion under Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), to have the State explain why it used all of its peremptory challenges to exclude African-Americans. The prosecution set out the following reasons for its strikes:
1. Juror Harold Watts was struck for several reasons: there was a question whether or not he knew any of the White family, Watts had been stopped at one time by an unmarked police car and there was concern he could hold animosity toward the police and Watts was unresponsive to the State's questions (court accepted as juror);
2. Juror Patrick Tillman was struck because he had three DUI convictions and this shows he has a disregard for the law (court rejected as juror);
3. Juror Patty Brown was struck because she married a cousin of the defendant, she knew the defendant's family and she also had heard about the facts of the case (court rejected as juror);
4. Juror Bessie Belton was struck because her son was twice indicted by Mr. Martin, the prosecutor in the case sub judice and this might prejudice her (court rejected as juror);
5. Juror Cathy Vaughn Martin was struck because she was unresponsive and made eye-to-eye contact with the defendant (court accepted as juror);
6. Juror Brenda Smith was struck because she was unresponsive and made eye-to-eye contact with the defendant (court accepted as juror).
¶ 36. Under Batson, the defendant must show: (1) that he is a member of a cognizable racial group; (2) that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race; and (3) that these facts and other relevant circumstances raise an inference that the prosecutor used that practice to exclude persons from the venire based on their race. Batson, 476 U.S. at 96-97, 106 S.Ct. 1712.
¶ 37. In the case sub judice, the trial judge found that White failed to prove purposeful discrimination by the State in its exercise of peremptory strikes. This Court has adopted the clearly erroneous standard of review of such findings. Davis v. State, 551 So.2d 165, 171 (Miss. 1989); Lockett v. State, 517 So.2d 1346, 1350 (Miss.1987). The reasons given by the State are among those which the Mississippi Supreme Court has previously found to be race neutral. See Lockett, 517 So.2d at 1356. Accordingly, we find no merit to White's assignment of error on the Batson issue.

III. WHETHER THE SENTENCE OF SIXTY YEARS CONSTITUTED CRUEL AND UNUSUAL PUNISHMENT.
¶ 38. In reviewing the sixty-year maximum sentence imposed in the present case, this Court must examine the recent Mississippi Supreme Court cases of White v. State, 742 So.2d 1126 (Miss.1999) and Davis v. State, 724 So.2d 342 (Miss.1998). In White and Davis the facts were substantially similar to the case sub judice. *229 Also, the appellant in White is the brother of the appellant in our case. Here, as in these cases, Michael White is a first time offender. As in White and Davis, Michael White has been sentenced to sixty years in prison.
¶ 39. In his brother's appeal, the White court discussed Miss.Code Ann. § 41-29-142 (enhanced penalties for the sale of a controlled substance within 1,500 feet of a church) and whether the maximum penalty could be considered cruel and unusual punishment. The White court stated that the "Legislature wisely provided ... a broad range of sentences to allow trial judges, using their discretion, to issue appropriate sentences in each individual case. It is incumbent upon those trial judges to use this power wisely." White, 742 So.2d at 1137 (¶ 45). "The Legislature has provided a wide range of possible sentences for those convicted of sale of cocaine. We are duty bound to insure this broad discretionary authority is properly put to use." Id. at 1138 (¶ 48).
¶ 40. In Davis, the Mississippi Supreme Court explained that the broad discretion in sentencing matters should not be taken away from the courts merely because no justification was presented for the particular sentence. Davis, 724 So.2d at 344 (¶ 11). However, the court further stated, "[O]ne cannot but be concerned about the severity of the sentence ... in the absence of anything appearing in the record which reflects egregious circumstances." Id. at 344 (¶ 10). With this, the court set forth the requirement that the trial judge justify any sentence that appears harsh or severe for the charge, as is the case regarding Michael White's sentence.
¶ 41. This Court is bound to follow Davis which requires the trial judge to state his reasons more clearly for imposing the maximum sentence
We recognize it is properly within the purview of the Legislature to determine the range of sentences, enunciating our citizens' determination of the social impact of harmful behavior. We equally well recognize that our circuit judges, present throughout criminal trials and observing in detail the testimony and evidence, are uniquely suited to apply a range of sentences to specific offenses.... Occasionally however, cases come before us in which sentences may be so severe as to appear on the record inexplicable and justify remanding the matter to the trial court for further consideration.
Davis, 724 So.2d at 344 (¶ 11). This Court recognizes the authority of the legislature to provide a range of sentencing and also recognizes such sentencing is left to the discretion of the trial court.
¶ 42. Reviewing the trial court's record in the present case, we find that the trial judge did attempt to explain his reasons for the sentence ultimately imposed. However, his reasons are unclear concerning whether egregious circumstances exist to justify such a sentence. With the White and Davis cases, however, we also recognize the trial court must do more than pass judgmentthe judge is duty bound to insure that his broad discretionary authority is properly put to use and the trial judge must state specific reasons for sentencing.
¶ 43. We remand this case for consideration of sentence consistent with the White and Davis opinions.

CONCLUSION
¶ 44. The law does not support White's contentions that the trial court was wrong in denying his motion for JNOV and in not accepting the Batson question for further review. Therefore, the findings of the lower court on each of these two issues are affirmed.
¶ 45. With regard to the sentencing issue, we now reverse and remand to allow the trial court to re-sentence in conformity to White and Davis.
¶ 46. THE JUDGMENT OF THE CIRCUIT COURT OF CONVICTION OF *230 SALE OF COCAINE IN A CHURCH ZONE AND SENTENCE OF SIXTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED IN PART AND REVERSED AND REMANDED IN PART. ALL COSTS OF THIS APPEAL ARE ASSESSED TO COPIAH COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, DIAZ, IRVING, LEE, MOORE, AND THOMAS, JJ., CONCUR.