905 So.2d 729 (2004)
Larry Keith LEWIS Appellant
v.
STATE of Mississippi Appellee.
No. 2003-KA-01959-COA.
Court of Appeals of Mississippi.
November 16, 2004.
*730 William Wayne Housley, Tupelo, William D. Massey, Memphis, TN, for Appellant.
Office of the Attorney General by Jean Smith Vaughan, for Appellee.
*731 Before KING, C.J., IRVING and MYERS, JJ.
MYERS, J.
¶ 1. On August 4, 2002, Larry Keith Lewis was involved in the shooting death of Paul Goodman. During the incident, Lewis's wife, Cynthia Lewis, suffered a gunshot wound to the neck which she miraculously survived. As a result, Lewis was charged with the murder of Goodman and the aggravated assault of Cynthia. In the Circuit Court of Lee County, Lewis was found guilty of manslaughter for the shooting death of Goodman and of aggravated assault for the injury caused to Cynthia Lewis. Lewis was sentenced to imprisonment for two twenty-year terms which are to run consecutively. With the assistance of counsel, Lewis timely filed a motion for judgment of acquittal or, in the alternative, for a new trial which was denied by the trial court. Lewis now appeals, raising the following four issues on appeal:
I. WHETHER THE TRIAL COURT ERRED BY ADMITTING STATE'S EXHIBITS 1 AND 35 THRU 43 OVER THE DEFENDANT'S OBJECTION.
II. WHETHER THE TRIAL COURT ERRED BY ADMITTING STATE'S EXHIBITS 31 AND 32 OVER THE DEFENDANT'S OBJECTION.
III. WHETHER THE TRIAL COURT ERRED BY OVERRULING THE DEFENDANT'S OBJECTIONS TO VARIOUS ASPECTS OF THE PROSECUTOR'S CLOSING ARGUMENT.
IV. WHETHER TWO CONSECUTIVE TWENTY-YEAR SENTENCES AMOUNT TO CRUEL AND/OR UNUSUAL PUNISHMENT IN VIOLATION OF THE EIGHTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES AND ARTICLE 3, SECTION 28 OF THE CONSTITUTION OF MISSISSIPPI.
Finding no error, we affirm.

STATEMENT OF FACTS
¶ 2. Larry Keith Lewis and his wife, Cynthia Lewis, were married on March 20, 1993. After approximately nine and one-half years of marriage, Cynthia decided to seek treatment for a long-term problem she had with abuse of the prescription drug Xanex. Cynthia was admitted to rehabilitation on June 10, 2002, and was released on June 18, 2002. It was during this nine-day period spent in rehabilitation that she met the deceased, Paul Goodman.
¶ 3. During their time spent together in the treatment facilities, Cynthia and Goodman developed an affection for one another. Recently out of rehabilitation and with thoughts of the relationship she developed with Paul Goodman on her mind, Cynthia returned to the marital home. Cynthia decided that she needed to get her life in order and felt that in order to do this successfully she and Lewis needed to obtain a divorce. Cynthia left her husband and their home in Olive Branch, Mississippi and moved to Tupelo, Mississippi to be with Goodman. Goodman and Cynthia moved in with one another soon thereafter.
¶ 4. On August 2, 2002, Lewis and Cynthia met at a restaurant in Tupelo to discuss the terms of their divorce. On August 3, 2002, Lewis returned to Tupelo allegedly to meet with Cynthia and again discuss the terms of their divorce. In the early hours of August 4, 2002, Lewis went to the apartment shared by Cynthia and Goodman and announced his presence at their front door. Goodman came to the door to see who was there and then peered *732 out of the mini-blinds in a nearby window to obtain a better look. Upon seeing Goodman peer through the mini-blinds, Lewis fired a nine-millimeter pistol through the window, striking Goodman and injuring him. Goodman fell to the floor and was crawling for safety behind the couch when he was shot twice more by Lewis, suffering fatal wounds. After being struck initially, Goodman handed the phone to Cynthia who attempted to call 911. As she stepped behind the love seat to disconnect the computer from the Internet, she was shot in the neck, suffering momentary paralysis. A neighbor heard the shots and walked outside her apartment to see Lewis leaving the scene. Medical attention was summoned to the apartment while Lewis returned to his hotel.
¶ 5. Following the incident at Cynthia and Goodman's apartment, Lewis checked out of his Tupelo hotel and returned to his parent's house in Memphis, Tennessee, where he was subsequently arrested on August 5, 2002. On August 6, 2002, Lewis signed a waiver of extradition and was transported to Tupelo to stand trial for murder and aggravated assault. On August 28, 2003, Lewis was convicted of manslaughter and aggravated assault in the Circuit Court of Lee County and was sentenced to two consecutive twenty-year terms of imprisonment.

LEGAL ANALYSIS
I. WHETHER THE TRIAL COURT ERRED BY ADMITTING STATE'S EXHIBITS 1 AND 35 THRU 43 OVER THE DEFENDANT'S OBJECTION.
¶ 6. Lewis first contends that the trial court erred by admitting photographs of the deceased taken both at the crime scene and during the autopsy in violation of Mississippi Rules of Evidence Rules 401,[1] 402,[2] and 403.[3]

STANDARD OF REVIEW
¶ 7. "The standard of review regarding admission [or exclusion] of evidence is abuse of discretion. Where error involves the admission or exclusion of evidence, this Court `will not reverse unless the error adversely affects a substantial right of a party.'" Whitten v. Cox, 799 So.2d 1, 13 (¶ 27) (Miss.2000) (citing Floyd v. City of Crystal Springs, 749 So.2d 110, 113 (Miss.1999)).

DISCUSSION
¶ 8. At trial, ten photographs were admitted which Lewis contends were irrelevant and unduly prejudicial. Nine of the photographs at issue were taken at Goodman's autopsy. These photographs illustrate the locations of Goodman's wounds. The tenth photograph depicts the location of Goodman's body at the crime scene, showing the position of the victim's body. It is Lewis's position that *733 his participation in the crime was not at issue since he never denied firing the fatal shots, therefore making the photographs unnecessary to prove the crime. Lewis contends that the photographs only served to inflame the jury.
¶ 9. The issue of admissibility of crime scene and autopsy photographs is well settled in Mississippi. The Mississippi Supreme Court has held,
Photographs have evidentiary value where they: 1) aid in describing the circumstances of the killing and the corpus delicti; Williams v. State, 354 So.2d 266 (Miss.1978); 2) where they describe the location of the body and cause of death; Ashley v. State, 423 So.2d 1311 (Miss.1982); and 3) where they supplement or clarify witness testimony. Hughes v. State, 401 So.2d 1100 (Miss. 1981).
Westbrook v. State, 658 So.2d 847, 849 (Miss.1995). As has been stated in a multitude of Mississippi cases, "[d]iscretion of the trial judge runs toward almost unlimited admissibility regardless of the gruesomeness, repetitiveness, and the extenuation of probative value." McGilberry v. State, 741 So.2d 894, 906 (¶ 27) (Miss.1999) (quoting Williams v. State, 544 So.2d 782, 785 (Miss.1987)). "Some probative value is the only requirement needed in order to support a trial judge's decision to admit photographs into evidence." Scott v. State, 878 So.2d 933, 985 (¶ 158) (Miss.2004) (citing Jordan v. State, 728 So.2d 1088, 1094 (¶ 17) (Miss.1998)).
¶ 10. The photographs meet all three tests set forth in the Westbrook opinion. The crime scene photograph aids in describing the circumstances surrounding the crime. This photo illustrates the contents of the apartment and the furniture which was originally in the marital home, giving the jury insight into what Lewis saw, possibly explaining his actions and arguably was taken into account in the jury's verdict of manslaughter rather than murder. The crime scene photo further clarifies the testimony for the jury regarding the positions of the victims and the layout of the apartment. The autopsy photographs clarify the testimony of the State's expert witness, Dr. Steven Hayne, and aids the jury in understanding the location of the wounds to which he testified. By clarifying the testimony and giving the jury a visual depiction of the matters to be determined, it cannot be said that the photographs are without probative value. Therefore, the trial judge did not abuse his discretion by allowing these photographs in as evidence and this issue is without merit.
II. WHETHER THE TRIAL COURT ERRED BY ADMITTING STATE'S EXHIBITS 31 AND 32 OVER THE DEFENDANT'S OBJECTION.
¶ 11. Lewis next contends that the trial court erred in allowing the State to offer a picture of Goodman and a group pictures of Goodman, Cynthia Lewis and her parents taken shortly after Cynthia moved to Tupelo.

STANDARD OF REVIEW
¶ 12. As stated above, the standard of review regarding the admission or exclusion of evidence is abuse of discretion. Tatum v. Barrentine, 797 So.2d 223, 230 (¶ 29) (Miss.2001) (citing Thompson Mach. Commerce Corp. v. Wallace, 687 So.2d 149, 152 (Miss.1997)).

DISCUSSION
¶ 13. Lewis contends that the two pictures admitted into evidence were both irrelevant and highly prejudicial, though at trial the only objections he made were with regards to relevance of the photographs as is shown by the following:

*734 Q. Ms. Lewis, I'd like to show you State's Exhibit 32 for identification. Do you recognize that photograph?
A. Yes, I do.
Q. Is that a photograph of you and Paul Goodman?
A. Yes.
Q. And who else?
A. My parents.
Q. Okay. Do you remember when that was taken?
A. Around June the 27th, 2002.
Q. June?
A. Twenty-seventh.
Q. Twenty-seventh?
A. Uh-huh (Indicating yes).
Q. And is that a fair and accurate way or likeness of the way things were 
A. Yes.
Q. when that picture was taken?
A. Oh, yes.
Mr. Daniels: Your Honor, we offer this as State's Exhibit No. 32 into evidence.
The Court: Any objection?
Mr. Massey: 401, 402, Your Honor, relevance.
The Court: Be received and marked.
Q. Ms. Lewis, this is State's Exhibit No. 31 for identification. What is that photograph of?
A. Paul.
Q. Paul Goodman?
A. Yes.
Q. Is that what he looked like?
A. Yeah.
Q. It's a fair representation of him on that day?
A. (Nods head affirmatively.)
Mr. Daniels: We offer State's Exhibit No. 31 for identification into evidence.
Ms. McCluskey: Same objection, Your Honor.
The Court: The objection will be overruled. Will be received and marked. I will make a record concerning this. It will be received. You may mark it.
¶ 14. In neither objection by counsel for Lewis is there any mention of Rule 403 or that the prejudicial effect of the pictures would outweigh their probative value, yet this issue is raised on appeal. It is well-settled law in Mississippi that one is procedurally barred from asserting an argument on appeal to which no contemporaneous objection was made. Haggerty v. Foster, 838 So.2d 948, 954 (¶ 8) (Miss.2002) (quoting Gatlin v. State, 724 So.2d 359, 369 (¶ 43) (Miss.1998)). Lewis's argument that the pictures were admitted in violation of Rule 403 is not properly before this Court and therefore his argument on this point is procedurally barred.
¶ 15. Lewis also contends that neither of the two pictures was relevant, as it was undisputed that Goodman and Cynthia were romantically involved. In order to be admissible, the evidence must first pass the threshold requirement of relevancy. Rule 401 of the Mississippi Rules of Evidence defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." The comment to Rule 401 states that "[i]f the evidence has any probative value at all, the rule favors its admission." It has long been determined in Mississippi that the trial judge is given wide discretion in determining the admissibility of evidence with regards to relevance.
A trial judge enjoys a great deal of discretion as to the relevance and admissibility *735 of evidence. Hughes v. State, 735 So.2d 238 (¶ 134) (Miss.1999). However, the discretion of the trial judge must be exercised according to the Mississippi Rules of Evidence. Johnston v. State, 567 So.2d 237, 238 (Miss.1990). We will only reverse a trial court's determination concerning the relevancy or admissibility of evidence if an abuse of discretion existed. Jefferson v. State, 818 So.2d 1099 (¶ 6) (Miss.2002).
Martin v. State, 834 So.2d 727, 729 (¶ 7) (Miss.Ct.App.2003).
¶ 16. The admissibility of the evidence was a determination for the trial judge to make and it appears from the record that the introduction of this evidence was relevant, in that it gave insight to the jury of Goodman's life prior to this tragedy. It cannot be said that it was an abuse of the court's discretion in reaching the conclusion to allow the introduction of the evidence. As a result, we find no error, and, therefore, we affirm.
III. WHETHER THE TRIAL COURT ERRED BY OVERRULING THE DEFENDANT'S OBJECTIONS TO VARIOUS ASPECTS OF THE PROSECUTOR'S CLOSING ARGUMENT.

STANDARD OF REVIEW
¶ 17. The standard used in reviewing closing arguments is "whether the natural and probable effect of the prosecuting attorney's improper argument created unjust prejudice against the accused resulting in a decision influenced by prejudice." Rushing v. State, 711 So.2d 450, 455 (¶ 15) (Miss.1998) (quoting Taylor v. State, 672 So.2d 1246, 1270 (Miss.1996)).

DISCUSSION
¶ 18. Lewis advances three issues for review arising from the State's closing argument.

I. State's use of a cellular telephone as a demonstrative aid during closing argument.
¶ 19. Lewis first contends that the prosecutor's use of a cellular telephone during closing arguments resulted in reversible error. Lewis's contention centers around the fact that the cellular telephone used during closing arguments was not a landline based cordless telephone, as was present the night of the incident. During closing arguments, the prosecutor held a cellular telephone in his hand and stated to the jury, "Now, if I approach you with a telephone in my hand, what do you think? Do you think I'm going to kill you? Do you think I'm going to shoot you?" Upon objection by Lewis's counsel, the trial court held that the prosecutor made no representation to the effect that the phone was the same as was present at the scene but that it was used simply for demonstration purposes.

II. State's reference to the competence of defense counsel during closing argument.
¶ 20. At trial, prior to closing arguments, defense counsel presented a motion in limine asking the court to disallow the State from making reference to the defense attorney's hometown. Specifically barred from the State's closing argument were references such as "Memphis," "lawyers from Memphis," or "it may be how they do it in Memphis." During the State's closing argument, the prosecutor stated:
Ladies and gentlemen of the jury, I've been practicing criminal law since 1978, and rarely in all those years have I ever heard a more capable and more persuasive attorney than what you have been presented with. The defendant told you that he gave in, you know, he cooperated with law enforcement when they came to get him, and he waived his extradition. *736 And that's true, but let me tell you why he did that and what he did really to protect himself. He did it because he knew he was caught. He knew he murdered Paul Goodman. He knew that he was caught. What could he do to protect himself? I'll tell you what he could do. He could employ one of the most able defense counsel, one of the best defense teams I have ever seen.
¶ 21. Upon a sustained objection by defense counsel, the State was instructed to "[m]ove along, counsel." Lewis asserts that the State's reference to defense counsels's competence appealed to the jury's baser instincts, passions, and prejudices.

III. Statements by the State regarding the state of mind of the accused.
¶ 22. Lewis's final contention of error concerns the prosecutor's remark regarding the defendant's state of mind. In the State's closing argument, the prosecutor stated:
The essence of the crime of manslaughter [is a crime] without malice aforethought or deliberate design. Now it would be very difficult for me, but I'm on one side. I'm not trying to lie to you. It would be very difficult to me to believe that he didn't have any malice toward Paul Goodman.
¶ 23. Following an objection by the defense, the State went on to say:
And to convict of manslaughter you have to find that he acted without this malice, the malice that he told you about from this stand, or with deliberate design, all this plan to do it in the middle of the night, to walk through the back of the apartments, to carry his gun with him in the sudden heat of passion.
¶ 24. The law is clear that a prosecutor should abstain from incorporating his or her personal beliefs into the presentation of his case. United States v. Young, 470 U.S. 1, 9-10, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985). It is also clear when taking the prosecutor's comments in this case as a whole that the prosecutor was explaining the essential elements of manslaughter to the jury. Though the prosecutor may not have been as articulate in his presentation of this material as the law would desire, it cannot be stated that his explanation of these elements was conducted to inflame the passions of the jury.
¶ 25. Under Lewis's three assignments of error the same standard of review applies and the law in Mississippi for this area is clear; attorneys are given wide latitude during closing arguments. McGilberry v. State, 741 So.2d 894, 910 (¶ 44) (Miss.1999). Further, it is well-established law in Mississippi that in reviewing the decision of admissibility of statements made in closing argument, that counsel should be allowed a broad range when making their arguments to the jury, which the trial court should be sensitive to restricting. Ahmad v. State, 603 So.2d 843, 846 (Miss.1992). With this allowance given the attorney during closing argument in mind, any allegedly improper prosecutorial comments must be considered in context, considering the circumstances of the case, when deciding on their propriety. United States v. Bright, 630 F.2d 804, 825 (5th Cir.1980). As the record does not indicate that any prejudice occurred from any of the prosecutor's comments, especially in light of the jury's verdict of manslaughter rather than murder, it cannot be stated that the trial judge abused his discretion in overruling any of the defense's objections during the prosecutor's closing argument. We find the trial judge did not abuse his discretion and therefore, we affirm.
*737 IV. WHETHER TWO CONSECUTIVE TWENTY-YEAR SENTENCES AMOUNT TO CRUEL AND/OR UNUSUAL PUNISHMENT IN VIOLATION OF THE EIGHTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES AND ARTICLE 3, SECTION 28 OF THE CONSTITUTION OF MISSISSIPPI.

STANDARD OF REVIEW
¶ 26. Generally, a sentence will not be disturbed on appeal if it does not exceed the maximum term allowed by statute. Wallace v. State, 607 So.2d 1184, 1188 (Miss.1992). Although, when a sentence is "grossly disproportionate" to the crime committed, the sentence is subject to attack on the grounds that it violates the Eighth Amendment prohibition of cruel and unusual punishment. Id.

DISCUSSION
¶ 27. Lewis contends that by imposing two consecutive twenty-year sentences, which is equivalent to a forty-year sentence, the State has imposed a sentence which is cruel and/or unusual punishment in violation of his Eighth Amendment constitutional right as well as in violation of Article 3, Section 28 of the Mississippi Constitution. Lewis reasons that this sentence constitutes cruel and/or unusual punishment because he does not have a prior record.
¶ 28. The case of Hoops v. State, 681 So.2d 521, 538 (Miss.1996) stated that "the general rule in this state is that a sentence cannot be disturbed on appeal so long as it does not exceed the maximum term allowed by statute." The penalty for manslaughter as defined by Mississippi Code Annotated § 97-3-25 (Rev.2000), ranges from one year to twenty years imprisonment. Likewise, the penalty for aggravated assault as defined by Mississippi Code Annotated § 97-3-7(2) (Rev.2000), ranges from one year to twenty years imprisonment. The punishment rendered by the trial court was the maximum allowed by statute, yet it was within the permissible statutory guidelines.
¶ 29. Lewis argues that Mississippi case law in this area is controlled by the decisions of Davis v. State, 724 So.2d 342 (Miss.1998); Presley v. State, 474 So.2d 612 (Miss.1985); White v. State, 742 So.2d 1126 (Miss.1999); and White v. State, 761 So.2d 221 (Miss.Ct.App.2000). In Davis, the defendant was sentenced to sixty years imprisonment for the sale of .2 grams of crack cocaine for forty dollars. The defendant in the Presley decision was sentenced to forty-years imprisonment for attempted theft of two ribeye steaks and displaying a pocketknife during his escape, but not causing any injury. In the first White decision, the defendant was sentenced to sixty-years imprisonment for the sale of forty dollars worth of crack cocaine within 1,500 feet of a church. The second White decision dealt with the identical facts of the first White decision except the defendant was the brother of the defendant in the original decision. In the second White decision, the defendant also received a sixty-year prison sentence for the sale of forty dollars worth of crack cocaine within 1,500 feet of a church.
¶ 30. The facts of each of these cases are easily distinguishable from the case sub judice in that no one was killed. Each of the cases dealt with non-violent crimes coupled with a lengthy prison sentence. Lewis was convicted of the violent crimes of manslaughter and aggravated assault. The jury determined he was responsible for the death of Paul Goodman and the aggravated assault of his wife, Cynthia Lewis. For his actions, the trial judge sentenced him within the statutory guidelines set forth in Mississippi Code Annotated § 97-3-7 and § 97-3-25.
*738 ¶ 31. In the White decision, the Mississippi Supreme Court discussed whether maximum penalties may be deemed to be cruel and unusual. White, 742 So.2d at 1136 (¶ 45). The legislature has given courts broad range of possible sentences, and it is the duty of the trial judges to use their discretion in determining appropriate sentences. On review, we are bound to insure that this broad discretionary authority is properly utilized. Green v. State, 762 So.2d 810, 814 (¶ 9) (Miss.Ct.App.2000). In this instance, the trial judge explained to Lewis:
I suppose that each of us has some understanding how one might feel where a wife or husband leaves, takes up with someone else or whatever. That provides no justification whatsoever for killing, maiming, injuring as occurred in this case. The jury made the decision whether or not murder was appropriate and elected to find you, the defendant, guilty of manslaughter, and I am convinced that in the course of coming to that conclusion the jury probably considered all of the circumstance, all of the circumstances involved, and in finding you guilty of manslaughter reacted to the unseemly circumstance I eluded to a moment ago, in effect extending to you some understanding and/or mercy at the hands of the jury.
¶ 32. The court further explained its reasoning for the sentence:
Notwithstanding that, the bottom line is that because you elected to go forward with a weapon and to use that weapon, there is one person dead, that can never be undone, another who has been seriously injured but miraculously survived and appears to be in reasonably good physical condition as she appeared before the court. Nothing that I can do here can undo any part of that, but I feel it is incumbent as judge to impose sentences which in some measure approximate the danger, the hurt, damage, death, whatever.
¶ 33. The trial judge clearly set forth his reasoning for imposing this sentence. As this decision was within the statutory guidelines, is readily distinguishable from the aforementioned case law, and the trial judge articulated his reasoning for the sentence rendered, we affirm.
¶ 34. THE JUDGMENT OF THE CIRCUIT COURT OF LEE COUNTY OF CONVICTION OF COUNT I, MANSLAUGHTER AND SENTENCE OF TWENTY YEARS; COUNT II, AGGRAVATED ASSAULT AND SENTENCE OF TWENTY YEARS WITH THE SENTENCES TO RUN CONSECUTIVELY IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO LEE COUNTY AS DESIGNATED IN THE COURT ORDER DATED AUGUST 28, 2003. ALL OTHER COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., BRIDGES and LEE, P.JJ., IRVING, CHANDLER, GRIFFIS, and ISHEE, JJ., concur. BARNES, J., not participating.
NOTES
[1] Definition of "Relevant Evidence"  "Relevant Evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.
[2] Relevant Evidence Generally Admissible; Irrelevant Evidence Inadmissible  All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, the Constitution of the State of Mississippi, or by these rules. Evidence which is not relevant is not admissible.
[3] Exclusion of Relevant Evidence on Grounds of Prejudice, Confusion, or Waste of Time  Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.