# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-KA-01723-COA

**QUENDARIUS BERJUAN ROBINSON A/K/A**            **APPELLANT**
**QUENDARIUS ROBINSON A/K/A**
**QUENDARIUS B. ROBINSON A/K/A**
**QUENDARIUS BREJUAN ROBINSON**

**v.**

**STATE OF MISSISSIPPI**                                 **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 11/03/2016 |
| TRIAL JUDGE: | HON. SMITH MURPHEY |
| COURT FROM WHICH APPEALED: | PANOLA COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: GEORGE T. HOLMES |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: JOSEPH SCOTT HEMLEBEN |
| DISTRICT ATTORNEY: | JOHN W. CHAMPION |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 05/15/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE IRVING, P.J., BARNES AND WILSON, JJ.**

**BARNES, J., FOR THE COURT:**

¶1. After a jury trial in Panola County Circuit Court, Quendarius Robinson was convicted of two counts of first-degree murder and one count of possession of a firearm by a felon. For the murder convictions, he was sentenced to two consecutive life terms in the custody of the Mississippi Department of Corrections (MDOC). For the conviction of possession of a firearm, he was sentenced to ten years to run consecutively to his life sentences. He filed a post-trial motion, which the trial court denied.

¶2.     On appeal, Robinson asserts only one issue – whether the trial court committed reversible error by admitting certain hearsay evidence at trial, specifically statements made by his minor son during a forensic interview, the trial testimony by the interviewer, and the video recording of the forensic interview.  We find that while the trial judge failed to make an on-the-record finding that the hearsay evidence was "more probative on the point for which it [was] offered" than other evidence under Mississippi Rule of Evidence 803(24),[1] such failure constituted harmless error.  We affirm Robinson's convictions and sentences.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

¶3.     Robinson had an "off and on" relationship with the mother of his child, Cearea Jackson.  Jackson lived in Como, Mississippi, with her two sons – four-year-old Quendarius Robinson Jr. (Junior) and two-month old Quendez Robinson [2] – and her grandmother, Emma.

¶4.     On the evening of November 27, 2015, Junior ran to the house of his next-door neighbor, Sherry Boyce, "in a state of shock" and "hysterical."  Junior told Boyce that Robinson had shot his mother and Emma.  Law enforcement and emergency medical services responded to find Jackson and Emma dead from gunshot wounds.  Police discovered that Jackson's vehicle, a 2007 Nissan Altima, was missing and issued a BOLO ("be on the lookout") for Robinson as a person of interest.  The Mississippi Bureau of Investigation

---

[1] Rule 803(24) provides a "catch-all" hearsay exception to the exclusion of hearsay. A statement is not covered by the rule if it is (1) trustworthy; (2) "offered as evidence of a material fact"; (3) "more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts"; (4) its admission will "best serve the purposes of these rules and the interests of justice"; and (5) the proponent gives the adverse party "reasonable notice."

[2] Quendez is not Robinson's child.

(MBI) was called to assist with the investigation. On November 30, the MBI located Robinson and the Nissan Altima in Batesville, Mississippi, and Robinson was taken into custody. Forensic testing revealed that a swab of blood found in the Altima was consistent with Robinson's DNA. Particles indicative of gunshot residue were also detected on the car's steering wheel and on the sleeve of a black hooded jacket found in the car. On April 20, 2016, Robinson was indicted of Count I, murder in the first degree for the murder of Emma; Count II, murder in the first degree for the murder of Jackson; and Count III, possession of a firearm by a felon.

¶5. A jury trial was held on October 31-November 3, 2016. Prior to jury selection, the State moved to admit a video recording containing a forensic interview of Junior taken two days after the murders. Tina Roberson, a forensic interviewer employed by Healing Hearts Child Advocacy Center, conducted the interview. The defense argued this evidence would be cumulative of other testimony and did not "fall under any of the other exceptions to hearsay." The State responded that the interview went "into more detail as to what happened inside" (i.e., "what happened inside the home as to what room they were in, what color the gun was, where [Robinson] had the gun.") Therefore, it argued that this was the "best evidence that could be offered by the State." The trial judge held the motion in abeyance until he had an opportunity to view the video.

¶6. Prior to opening statements, the trial judge viewed the recording and granted the State's motion to admit the evidence, noting that the State intended to introduce the video during Roberson's testimony and after Junior had testified. The trial judge also observed that

3

the interview techniques "illustrate[d] to the [c]ourt the requisite trustworthiness necessary for this to be properly admissible, that being one of the factors to come within the requirements of . . . Mississippi Rule of Evidence 803(24)." He found that the defense had notice and the evidence was "material." He concluded that the video's "probative value [was] certainly outweighed by any potential prejudice in this matter," and it would be in the "interest of justice" to permit the video to be viewed by the jury.

¶7.     Eloise Jackson, Emma's daughter and Jackson's mother, testified that she lived at the home with her mother, daughter, and grandchildren. She said Robinson was at the home with her sister, mother, and the children that evening when she left to go out with a friend. She returned a short time later, after being alerted to the shootings, and Robinson was not there. Neither was Jackson's car.

¶8.     Five-year-old Junior testified that Robinson, his "daddy," had "shot [his] momma and [his] grandmomma." Junior also said that he ran next door to Boyce's home and told her what had happened. He reiterated on redirect examination that Robinson shot Jackson and Emma.

¶9.     The State called Roberson, the forensic interviewer, as a witness. Before taking the stand, defense counsel objected to her testimony, asserting that Roberson was not qualified as an expert; therefore, it would be "improper for [her] to render an opinion as to [Junior's] veracity" during the interview. The trial judge noted its prior ruling that the video and statement by Junior "was sufficiently trustworthy and reliable to be permitted to be introduced under 803(24)." The State assured defense counsel it had no intention of having

4

Roberson render any opinion. After voir dire, the trial court received her as an expert in the field of forensic interviewing. When the State offered Roberson's summary report into evidence, defense counsel argued it should be excluded as the video recording was the "best evidence as to what [Junior] stated[.]" The trial court overruled the objection. Roberson's summary report of the interview stated:

> [Junior] reported his daddy shot his mama and now she is dead. [Junior] reported his daddy shot his mama and his grandmama Emma Jean at his mother's house. [Junior] reported he heard the gun and he [(Junior)] started running. [Junior] reported he saw a black gun that his daddy keeps in his pants. [Junior] reported he was in his grandmama Emma Jean's bedroom when he heard the gun. [Junior] reported his daddy, Emma Jean, and his mother were also in the room. [Junior] reported he saw the gun shoot his mother in her head.

The State subsequently offered the video recording of the interview into evidence, and the defense reiterated its earlier objection, which the court overruled. The video was played for the jury. In the video, Junior mentioned his daddy had a "black" gun; he kept it in his pants. Afterward, Roberson acknowledged that Junior had stated initially in the interview that he was at the neighbor's home when the shooting occurred, but later after she asked the rephrased the question, he indicated that he was in the room. She explained that children will sometimes "remove[] themselves" from a "traumatic experience in their life."

¶10. Boyce, the neighbor, testified that Junior appeared at her house that evening "hysterical" and "shaking," exclaiming that his "dad done shot my momma and shot my grandmomma." Her boyfriend, Kentry Holmes, corroborated Boyce's testimony, saying that Junior appeared at their home "scared [and] screaming." There were also two witnesses at Boyce's home that evening, Jeremy Ramsey and Steven Taylor, who testified that Junior

came to Boyce's house. Ramsey, who knew the family, said that Junior "was traumatized" and "his voice was trembling." Both witnesses affirmed that Junior told Boyce that his "dad" had shot his mother and grandmother. Ramsey also stated that he noted someone on Jackson's porch, who was "trying to tell [Junior] to come back or come here[.]" Neither Ramsey nor Taylor knew Robinson, however.

¶11. Chase Harris, Emma's granddaughter and Jackson's first cousin, and her friend, Alexis Pettis, testified they were at Jackson's home that evening and saw Robinson there. They left to go to visit a nearby neighbor's home. Standing in the neighbor's driveway, they saw Junior run to Boyce's house and, shortly thereafter, observed Robinson exit Jackson's home, get into the Nissan Altima, and leave. Pettis testified that Robinson was wearing a black "hoodie."

¶12. Brenda Simpson, the mother of Robinson's friend, testified at trial that Robinson came by her home in Batesville, Mississippi, around 10:30 p.m. that evening. Robinson asked if he could use her bleach to clean his hands, and she gave him a towel. She stated he was wearing "a black pullover . . .with hoodie." He left shortly after washing his hands.

¶13. Robinson was found guilty on all counts.[3] For Counts I and II, Robinson received consecutive life sentences in the custody of the MDOC. For Count III, he received a ten year sentence to run consecutively to his sentence in Count II. On November 14, 2016, Robinson filed a motion for a judgment of acquittal, or in the alternative, for a new trial. In addition to other assignments of error, Robinson argued the trial court committed reversible error

---

[3] It was stipulated at trial that Robinson had a prior felony conviction.

(1) "in allowing the forensic interviewer's report to be admitted into evidence" as the report "was totally prejudicial to [Robinson] receiving a fair trial"; (2) in allowing Roberson to testify; and (3) by admitting the video recording of the forensic interview with Junior into evidence. The motion was denied, and Robinson now appeals.

## ANALYSIS

¶14. Robinson claims the trial court committed reversible error by allowing hearsay evidence from Junior's forensic interview through Roberson's testimony, Roberson's summary report, and the video recording of the interview. Robinson asserts that the interviewer "deviated from established protocols and asked Junior to go over the details several times in an effort to correct his inconsistencies." He also argues that because Junior testified, the interview evidence was "less probative than Junior's testimony."

¶15. Regarding the admission or exclusion of evidence, we employ an abuse-of-discretion standard of review. *Osborne v. State*, 942 So. 2d 193, 200-01 (¶28) (Miss. Ct. App. 2006) (citing *Lewis v. State*, 905 So. 2d 729, 732 (¶7) (Miss. Ct. App. 2004)). "Reversal based on an error involving the admission or exclusion of evidence is proper only when the error 'adversely affects a substantial right of a party.'" *Id.* at 201 (¶28) (citing *Lewis*, 905 So. 2d at 732 (¶7)). The basis for the trial judge's admission of this particular evidence was Mississippi Rule of Evidence 803(24), which provides a "catch-all" hearsay exception:

> The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness: . . .

> (24)    Other Exceptions. A statement not specifically covered by this Rule if:

> (A)    the statement has equivalent circumstantial guarantees of

trustworthiness;

(B)     it is offered as evidence of a material fact;

(C)     it is more probative on the point for which it is offered than any
        other evidence that the proponent can obtain through reasonable
        efforts;

(D)     admitting it will best serve the purposes of these rules and the
        interests of justice; and

(E)     before the trial or hearing, the proponent gives an adverse party
        reasonable notice of the intent to offer the statement and its
        particulars, including the declarant's name and address, so that
        the party has a fair opportunity to meet it.

M.R.E. 803(24). As already discussed, the trial judge determined that the evidence had "the requisite trustworthiness necessary for [it] to be properly admissible . . . [and the video's] probative value [was] certainly outweighed by any potential prejudice in this matter." Generally, an on-the-record finding as to Rule 803(24)'s five factors is required; "the trial judge has considerable discretion in determining whether to admit hearsay evidence under this exception[,] and his decision will not be overturned except for an abuse of discretion." *Rubenstein v. State*, 941 So. 2d 735, 752 (¶30) (Miss. 2006) (quoting *Parker v. State*, 606 So. 2d 1132, 1138 (Miss. 1992) (overruled on other grounds by *Goff v. State*, 14 So. 3d 625 (Miss. 2009))). However, the Mississippi Supreme Court has cautioned that the "catch-all exception should be carefully considered and applied rarely, so as not to devour the hearsay rule." *Bailey v. Woodcock (In re Interest of C.B.)*, 574 So. 2d 1369, 1373 (Miss. 1990) (citing *Mitchell v. State*, 539 So. 2d 1366, 1370 (Miss. 1989)). We find no abuse of discretion in the trial judge's determination that the evidence was "sufficiently trustworthy

8

and reliable" and "material." But the trial court failed to make an on-the-record finding that this hearsay evidence was "more probative on the point for which is it offered than any other evidence," instead finding that the evidence's "probative value [was] . . . outweighed by any potential prejudice[.]"

¶16. The supreme court has held:

> M.R.E. 803(24) would not be available to admit the disputed hearsay unless the hearsay statement offered is more probative on point for which it is offered than any other evidence which the proponent can procure through reasonable efforts. Hence, if the child were available to testify, then this catch-all exception would not be available. The child's testimony, not the hearsay, would be "more probative on point for which it is offered than any other evidence which the proponent could procure."

*Id*. at 1373. Although not controlling authority, we find discussion of this issue from the Supreme Court of North Carolina – which relies on a "necessity" requirement in such instances – instructive. It stated:

> This requirement of "necessity" has been inherent in the analysis of hearsay exceptions long before even the Federal Rules of Evidence were codified. . . . The requirement imposes the obligation of a dual inquiry: were the proponent's efforts to procure more probative evidence diligent, and is the statement more probative on the point than other evidence that the proponent could reasonably procure?
>
> Where a declarant is available at trial, the degree of necessity to admit his or her hearsay statement through the testimony of another is greatly diminished. Usually, *but not always*, the live testimony of the declarant will be the more (if not the most) probative evidence on the point for which it is offered. Because Rule 803(24) allows hearsay evidence to be admitted "even though the declarant is available as a witness," *the trial judge must, in this event, take care in documenting for the record his basis for finding that this "necessity" requirement is met*. . . . Should the trial court determine that the proffered evidence is not "more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts," his inquiry must end, and the evidence may not be admitted under Rule

9

803(24).

*State v. Smith*, 337 S.E.2d 833, 846 (N.C. 1985) (internal citations omitted and emphasis added). We acknowledge that the State argued during the pre-trial motion hearing that the forensic interview provided more details regarding the shooting, and was, therefore, the "best evidence." Further, the forensic interview occurred only two days after the shootings. The recollection of the four-year-old declarant, Junior, was likely fresher during the interview than at trial almost a year later. However, the trial judge failed to document on the record the basis for the "necessity" of this hearsay evidence. He simply determined that the evidence was more probative than prejudicial. This is not what the rule requires.

¶17. Nevertheless, the court's failure to make such a determination is harmless error. Our supreme court has determined that "[w]here corroborative evidence exists and the hearsay evidence is merely cumulative, the admission may be held to be harmless." *Young v. State*, 679 So. 2d 198, 203 (Miss. 1996) (citing *Jones v. State*, 606 So. 2d 1051, 1057 (Miss. 1992)). In this case, there was overwhelming evidence through other witnesses' testimony and the evidence to support the jury's finding that Robinson was guilty of the charged crimes. Jackson's mother, Eloise, testified that Robinson was at the house that evening when she left. Boyce, Holmes, Ramsey, and Taylor gave consistent testimony that Junior ran over to Boyce's home and exclaimed that Robinson had shot his mother and grandmother. Harris and Pettis testified that they observed Junior's running to Boyce's home and Robinson's leaving the house a short time later in Jackson's car. Simpson testified that Robinson came to her home late that evening and washed his hands with bleach. Both Pettis and Simpson

10

said Robinson was wearing a black "hoodie" that night, and a black hooded jacket with gunshot residue on the left sleeve was found in Jackson's vehicle. Defense counsel even argued at trial that the interview was "cumulative" of the other evidence being presented. Also, during Junior's cross-examination, the defense referenced the statements Junior had made to the interviewer.

¶18. Accordingly, we find the trial court's admission of the hearsay evidence was not reversible error, and we affirm the judgment.

¶19. **AFFIRMED.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., CARLTON, FAIR, WILSON, GREENLEE, WESTBROOKS AND TINDELL, JJ., CONCUR.**