# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2005-KA-01059-SCT

*WILLIE JAMES GATES*

*v.*

*STATE OF MISSISSIPPI*


| | |
|---|---|
| DATE OF JUDGMENT: | 05/31/2005 |
| TRIAL JUDGE: | HON. V. R. COTTEN |
| COURT FROM WHICH APPEALED: | LEAKE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | EDMUND J. PHILLIPS, JR. |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: SCOTT STUART |
| DISTRICT ATTORNEY: | MARK DUNCAN |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 08/03/2006 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |


**BEFORE WALLER, P.J., EASLEY AND GRAVES, JJ.**

**EASLEY, JUSTICE, FOR THE COURT:**

### PROCEDURAL HISTORY

¶1. Willie James Gates was indicted by a grand jury in Leake County, Mississippi, for willfully, unlawfully, feloniously, purposely, and knowingly causing bodily injury to James Viverette by shooting Viverette with a shotgun, a weapon likely to cause death or serious bodily injury, in violation of Miss. Code Ann. § 97-3-7(2)(b) (aggravated assault). The jury found Gates guilty of aggravated assault. The trial court sentenced Gates to serve twenty years in the custody of the Mississippi Department of Corrections and to pay a fine of $5,000 plus

all costs of court with ten years of said sentence suspended and probation for five years. Gates filed a motion for a new trial which the trial court subsequently denied. Gates now appeals to this Court in forma pauperis with the assistance of newly appointed counsel.

**FACTS**

¶2.     Gates and Viverette were neighbors and relatives embroiled in a dispute over the ownership of land between their homes. The land had been owned by Lessie Mae Sanders, Viverette's sister and Gates's grandmother, before she died. Viverette testified that his sister had willed the land in question to him. Gates had employed surveyors to determine the property lines which caused a quarrel between Gates and Viverette over the surveyors' presence on the property.

¶3.     Viverette testified that on June 24, 2004, he was putting up a "Posted" sign to prevent trespassing on his property and to stop the surveyors from surveying the property and did not hear Gates pull up in his car. Viverette heard a gunshot and realized that he had been shot. Viverette testified Gates shot him without provocation. However, Gates testified he shot Viverette in self defense at close range after Viverette attacked him by hitting his car with a Kyzar[1] blade with him inside the car. Viverette stated that he only had the hammer, nail, and sign in his hand at the time he was shot. According to Viverette, the Kyzar blade was leaned against the side of the tree when he was shot.

---

[1]     The term is commonly spelled "Kaiser", but throughout the record it is spelled "Kyzar". We will use the record spelling in this opinion.

¶4.     Vera Johnson was with Viverette on June 24, 2004. Johnson waited in Viverette's truck parked on the side of the road while he went to post the sign. Johnson testified she could clearly see Viverette from where she was sitting. Johnson saw Gates pull up in his car with his two boys present in the vehicle. Johnson testified she had known Gates for years, and she could see clearly into his car from where she was sitting. Gates parked his car in the middle of the road. Gates did not get out of the car. Johnson then heard a gunshot. Gates drove away fast, and then Johnson saw blood coming down Viverette's shoulder. Johnson testified Viverette and Gates did not exchange any words, and Viverette did not chase Gates with a Kyzar blade or strike Gates's car with a Kyzar blade.

¶5.     On June 24, 2004, Officer Carey Thomas, a deputy sheriff with the Leake County Sheriff's Office, was dispatched to the emergency room at Leake County Hospital on an aggravated assault call. Viverette was at the hospital. Viverette had been shot in the right ear. Officer Thomas testified Viverette informed him that Gates shot him, and he had not done anything to cause Gates to shoot him. Later that same day, Officer Thomas and Officer Mark Wilcher, another deputy sheriff, approached Gates in regard to an arrest warrant. Officer Thomas did not ask Gates any questions, but he observed Gates's mother retrieve a single barrel shotgun and hand it over to Officer Wilcher.

¶6.     Officer Wilcher testified Gates told him that Viverette had attacked his car with a Kyzar blade and left scratches on the car. Officer Wilcher testified from photographs and his actual observance of the car that the scratches on the car did not appear to be consistent with Gates's claim that the car had been hit with a Kyzar blade. Officer Wilcher further testified that

3

nothing else in his investigation pointed to Viverette doing anything with a Kyzar blade, or anything else, to threaten Gates.

## DISCUSSION

### I.     Jury instruction D-4

¶7.     In *Humphrey v. State*, 759 So. 2d 368, 380 (Miss. 2000), we held the standard of review in reviewing jury instructions is as follows:

> Jury instructions are to be read together and taken as a whole with no one jury instruction taken out of context. A defendant is entitled to have jury instructions given which present his theory of the case, however, this entitlement is limited in that the court may refuse an instruction which incorrectly states the law, is covered fairly elsewhere in the instructions, or is without foundation in the evidence.

(citing *Heidel v. State*, 587 So. 2d 835, 842 (Miss. 1991)). *See also Austin v. State*, 784 So. 2d 186, 193 (Miss. 2001).

¶8.     Gates contends the trial court erred in refusing jury instruction D-4 which provided:

> The Court instructs the jury, that under the law, the Defendant is a competent witness in his own behalf, and that the Jury has no right to disbelieve him merely because he is a Defendant, and his testimony is entitled to such weight, faith, and credit as the Jury may think proper to give it.

¶9.     However, this same instruction was determined to have been properly denied by the trial court in *Coleman v. State*, 697 So. 2d 777, 784 (Miss. 1997), *disagreed with on other grounds*, and *Dilworth v. State*, 909 So. 2d 731, 735 (Miss. 2005). In *Coleman*, a similar instruction was denied as singling out the testimony of one witness. *Id*. The jury instruction in *Coleman* originally read as follows:

4

The Court instructs the jury that the law of this State gives the Defendant, Johnny Earl Coleman, the right to testify in his own behalf, and the jury has no right to disbelieve him simply because he is the Defendant. His testimony is entitled to just as much faith and credit as the jury under all circumstances thinks it should have. Furthermore, his testimony is just as entitled to the same consideration as that of any other witness who testified in this case.

*Id.* The instruction in *Coleman* was later amended to read:

The Court instructs the jury that the law of this State gives the Defendant, Johnny Earl Coleman, the right to testify in his own behalf. His testimony is entitled to the same consideration as any other witness who testified in this case.

¶10.    The Court held that "defendants are not entitled to an instruction which informs the jury that the defendant is a competent witness in his own behalf." *Id.* (citing *Baker v. State*, 391 So. 2d 1010, 1012 (Miss. 1980)). *See also Johnson v. State*, 452 So. 2d 850, 854-55 (Miss. 1984) (The Court held that the defendant was not entitled to an instruction stating "that defendants are not entitled to an instruction which informs the jury that the defendant is a competent witness in his own behalf."). This assignment of error is without merit.

## II.    Character of the victim

¶11.    "The relevancy and admissibility of evidence are largely within the discretion of the trial court and reversal may be had only where that discretion has been abused." *Hentz v. State*, 542 So. 2d 914, 917 (Miss. 1989).  However, the judge's discretion must be exercised within the bounds of the Mississippi Rules of Evidence. *Johnston v. State*, 567 So. 2d 237, 238 (Miss. 1990).

¶12.	At trial, Gates's trial counsel began a line of questioning during Viverette's cross-examination about a previous incident "some weeks or months" before the shooting on June 24, 2004.	Purportedly, Gates made out an affidavit in justice court against Viverette for assault, and Viverette filed a similar counter-charge against Gates.	The transcript reflects that Gates's trial counsel stated that he was unsure of the sequence of the filing of the charges.	The State provided that Viverette was expected to testify that there were two charges in justice court filed against each other at the same time.	Nothing was presented to the trial court to demonstrate that Viverette had been convicted in justice court.	Likewise, nothing presented definitively which individual filed the initial charge or who was the initial aggressor.

¶13.	The State argued that this purported prior incident which resulted in Gates and Viverette filing charges against each other in justice court had nothing to do with the case at hand. Gates's trial counsel stated that the issue of the victim's character never crossed his mind before beginning the line of question.	The trial court excluded the line of questioning pursuant to M.R.E. 404(a)(2).	On appeal, Gates's appellate counsel argues that it was proper to question Viverette regarding the purported prior incident in justice court some weeks or months before the shooting at hand as any allegation of a violent tendency of the victim was directly pertinent to Gates's defense.[2]

---

[2] Gates cites two cases *Simmons v. State*, 206 Miss. 535, 40 So. 2d 289 (1949), a pre-rules case which addressed character of a witness, not a victim; and *Vaughan v. State*, 759 So. 2d 1092 (Miss. 1999), which addressed character of a witness, not a victim, and focused on whether the evidence was properly proffered.	Neither case is directly applicable to the case sub judice.

¶14. Rule 404(a)(2) of the Mississippi Rules of Evidence provides:

(a) Character Evidence Generally. Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except:

(2) Character of Victim. Evidence of a pertinent trait of character of the victim of the crime offered by an accused, or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the victim offered by the prosecution to rebut evidence that the victim was the first aggressor

¶15. Here, the purported charges in justice court were too remote in time to have any bearing on the case at hand. Likewise, the charges allegedly were filed by Gates and Viverette against each other. The line of questioning proffered did not provide any evidence that Viverette was the first aggressor in the case sub judice. Furthermore, the questioning focused on the charges not Viverette's character trait for peacefulness. Viverette already testified extensively to the fact that bad feelings existed between Gates and himself over the tract of land. Viverette testified that problems between the two escalated when Gates had surveyors on the property.

¶16. Examining the record as a whole, the jury was clearly provided information evidencing the personal animosity that existed between Gates and Viverette. Also, a review of the record reveals that Johnson testified as an eye-witness to the incident. Johnson stated that Viverette did not undertake any aggressive act to provoke Gates to shoot him. In fact, Johnson testified that Gates shot Viverette from his car at a distance of approximately fifteen feet. Gates never got out of car that was parked in the middle of the street. Viverette testified that he was shot while he was in the process of nailing up a "Posted" sign. Johnson's account of the events substantiated Viverette's testimony that he was not the aggressor.

7

¶17. The testimony provided by Viverette and Johnson dispelled the argument in support of allowing the testimony under M.R.E. 404(a)(2) to prove a character trait for violence. In *McGilberry v. State*, 797 So. 2d 940, 945 (Miss. 2001), this Court addressed a similar situation as the case at hand, reasoning:

> The trial judge properly granted the State's motion in limine excluding reference to the altercation between McGilberry and Shelby two months before the shooting. The prior fight is not relevant because regardless of what occurred two months earlier, the deceased was not the aggressor the day he was shot. McGilberry came to the victim's place of business armed and looking for the victim. **The prior fight is irrelevant because nothing that occurred two months before played into this incident. The record shows that McGilberry was not acting in self-defense** . . .

(Emphasis added). *See also Walker v. Benz*, 914 So. 2d 1262, 1268 (Miss. Ct. App. 2005) (The court found that Walker's tendency towards aggressive behavior was not a pertinent character trait of Walker combined with the fact that Benz attacked Walker from behind as Walker was getting into his truck.).

¶18. Here, the evidence fails to demonstrate that Viverette was the initial aggressor on June 24, 2004. The purported counter-charges filed in justice court weeks or months earlier do nothing to demonstrate which individual was the aggressor in that prior alleged altercation. Likewise, the record does not demonstrate that either Viverette or Gates were previously convicted for the prior purported assault. At best, the evidence sought to be introduced by the line of questioning would have demonstrated that Gates and Viverette had personal animosity toward each other. Their animosity was fully covered by other testimony in the record. As

8

such, we find the trial court did not err in excluding this line of questioning. This assignment of error is without merit.

### III.    Hearsay

¶19.    Gates contends the trial court erred in sustaining the State's hearsay objection. On cross-examination, Viverette testified as to what Sarah Gates, Gates's mother, had said to him regarding the surveyors being present on the land during a telephone conversation that transpired prior to June 24, 2004, when the aggravated assault occurred. The State objected to Viverette's testimony on the grounds that it was hearsay for Viverette to testify as to what Sarah stated during the telephone conversation. We find the trial court properly sustained the hearsay objection.

¶20.    Without providing any elaborate analysis to show why the testimony was not hearsay, Gates's appellate counsel simply states that the statement was not offered to prove the truth of the matter asserted, and as such, it does not meet the definition of hearsay provided under M.R.E. 801(c).[3]    Here, Viverette's testimony was made in order to provide the details of Viverette's telephone conversation with Sarah. Viverette was clearly attempting to testify as to what Sarah had told him regarding whether the surveyors were present on the property. As

---

[3]    M.R.E. 801(c) defines hearsay as follows: "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."

such, Viverette's testimony as to what Sarah stated regarding the surveyors amounted to hearsay. *See* M.R.E. 801(c). This assignment of error is without merit.

¶21. However, the testimony as to what Sarah stated on the telephone clearly did not have any bearing on the aggravated assault at hand which occurred at a later date on June 24, 2004. Therefore, even assuming arguendo the exclusion of the testimony as hearsay was error, we find that it was harmless.

### IV. Leading Question

¶22. Gates argues that the trial court erred by overruling his objection as to a leading question. During the State's direct examination of Viverette, the following colloquy prompted the defense's objection:

Q:     And you say that you got your daughter. Would that be Janice Body?

A:     That's right.

¶23. Rule 611(c) of the Mississippi Rules of Evidence provides:

Leading questions should not be used on the **direct examination** of a witness **except as may be necessary to develop his testimony**. Ordinarily, leading questions should be permitted on cross-examination. When a party calls a hostile witness, an adverse party, or a witness identified with an adverse party, interrogation may be by leading questions.

(Emphasis added). Further, the comments to M.R.E. 611(c) provide:

[T]he judge has some discretion in allowing leading questions. Thus, leading questions are frequently used in developing preliminary matters. *See Seals v. St. Regis Paper Company*, 236 So. 2d 388 (Miss. 1970); *Thomas v. State*, 217 So. 2d 287 (Miss. 1968).

10

¶24. The name of Viverette's daughter was not an issue at trial. Viverette testified that his daughter drove him to the emergency room after he was shot. The State's question which prompted an objection as to leading was simply to ask Viverette if his daughter's name was Janice Body. The question was merely to provide a name for Viverette's daughter in the development of his testimony concerning how he arrived at the emergency room after being shot. Therefore, we find the trial court did not err in overruling Gates's objection as to leading. This assignment of error is without merit.

### V. Officer Wilcher

¶25. Gates contends that the trial court erred in allowing Officer Wilcher to testify as to whether the scratches on Gates's car which he observed first hand, in the course of his investigation, were consistent with a Kyzar blade hitting the car. Officer Wilcher testified that during the course of his investigation he interviewed Gates, and Gates claimed that Viverette had attacked his car with a Kyzar blade with him inside the car prompting him to shoot Viverette in self defense. Officer Wilcher testified that Gates showed him his car, and he actually observed the scratches on the car. Officer Wilcher testified that he had used a Kyzar blade in the past and was familiar with the use of a Kyzar blade.

¶26. The trial court conducted a hearing outside the jury's presence on Gates's objection. The State argued that Officer Wilcher was not testifying as to what caused the scratches on the car, just that from Officer Wilcher's experience and actual observation, the scratches did not appear to be consistent with the car being hit by a Kyzar blade. After hearing the defense's

argument in support of its objection and the State's recount of Officer Wilcher's prior testimony, the trial court questioned Officer Wilcher. The exchange was as follows:

Q: Let me hear you on what your testimony would be if I allowed that. . .

A: Your Honor, it was my experience with a Kyzar blade, the way I've used it, this just did not seem consistent with what you would expect a Kyzar blade to cause.

¶27. After more discussion on the record, the trial court stated that the jury is the arbiter of the facts and concluded that the testimony here was something within the grasp of a lay person to testify subject to full cross-examination by the defense.

¶28. Rule 701 of the Mississippi Rules of Evidence provides:

If the witness is not testifying as an expert, the witness's testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to the clear understanding of the testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Further, the comments to M.R.E. 701 provide in pertinent part:

Rule 701 is a departure from the traditional rule. It favors the admission of lay opinions when two considerations are met. The first consideration is the familiar requirement of **first-hand knowledge or observation**. The second consideration is that the **witness's opinion must be helpful in resolving the issues**.

(Emphasis added).

¶29. Officer Wilcher was recalled to the witness stand when the jury returned to resume his testimony. Besides testifying as to his personal observation of the scratches in the course of his investigation, Officer Wilcher also reviewed photographs that had been admitted into

evidence as an exhibit to the defense's case. Officer Wilcher then recounted Gates stating that Viverette attacked his car with a Kyzar blade with him inside which resulted in him shooting Viverette in self defense. Officer Wilcher's testified as to his personal experience with the use of Kyzar blades and his first-hand observation of the scratches on the car during the course of his investigation. Officer Wilcher testified that the scratches did not appear to be consistent with someone hitting the car with a Kyzar blade, but on cross-examination, he noted that the scratches on the car could only have been made if the person using the Kyzar blade had been very careful not to dent the car.

¶30. Based on a review of the record, we find the trial court did not err in admitting Officer Wilcher's testimony. This assignment of error is without merit.

## CONCLUSION

¶31. For the foregoing reasons, the judgment of the Circuit Court of Leake County, Mississippi, is affirmed.

¶32. **CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE OF TWENTY (20) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, PAYMENT OF A FINE OF $5,000, AND ALL COSTS, WITH CONDITIONS, AFFIRMED. TEN (10) YEARS OF SAID SENTENCE IS SUSPENDED LEAVING TEN (10) YEARS TO SERVE AND APPELLANT IS PLACED ON PROBATION FOR FIVE (5) YEARS.**

**SMITH, C.J., WALLER, P.J., DIAZ, CARLSON, DICKINSON AND RANDOLPH, JJ., CONCUR. COBB, P.J., AND GRAVES, J., CONCUR IN RESULT ONLY.**