BARNES, J.,
 

 for the Court:
 

 ¶1. On May 29, 2007, Debra S. Field was indicted on two counts stemming from drugs found in her car at a license and safety checkpoint: possession of cocaine in an amount more than .10 gram but less than 2 grams, and possession of marijuana in an amount less than 30 grams. Field was subsequently convicted of possession of marijuana; however, a mistrial was declared on the possession of cocaine charge as the jury was unable to reach a verdict. A second trial was held on April 16, 2008, and Field was convicted by a jury in the Newton County Circuit Court on a count of felony possession of cocaine and sentenced to eight years in the custody of the Mississippi Department of Corrections (MDOC). It is from this second conviction that Field now raises four issues on appeal: (1) whether the circuit court erred in sentencing Field to the maximum sentence allowable by law; (2) whether the circuit court erred in refusing to give a jury instruction which allegedly articulated Field’s theory of the case; (3) whether the circuit court erred in admitting evidence of other crimes; and (4) whether the search of the truck Field was driving was reasonable under the Fourth Amendment to the United States Constitution. Finding no error, we affirm Field’s conviction and sentence.
 

 FACTS AND PROCEDURAL HISTORY
 

 ¶ 2. On June 10, 2006, Newton County Sheriffs Deputy Toby Pinson (Deputy Pin-son) and his brother, Jeremy Pinson (Officer Pinson), a police officer from Hickory, Mississippi, established a license and safety checkpoint at about 3:00 p.m. According to Deputy Pinson, the checkpoint was authorized by Chief Deputy Sheriff Billy Pat Walker of the Newton County Sheriffs Department.
 

 ¶ 3. At about 3:20 p.m., a truck driven by Field arrived at the checkpoint and was stopped. Deputy Pinson asked Field for her driver’s license whereupon she informed the deputy that her license was suspended. Deputy Pinson detected the smell of alcohol and instructed Field to pull over to the side of the road. After Field complied, Deputy Pinson instructed her to step out of the truck and asked Field whether she had been drinking. Field informed Deputy Pinson that she had been “at the river” where she had a couple of drinks, prompting Deputy Pinson to ask if he could search her truck for alcohol. Field consented, telling Deputy Pinson that she did not care if he searched the truck because it did not belong to her. As Deputy Pinson searched the truck, Officer Pinson watched over Field.
 

 ¶4. During his search, Deputy Pinson noticed a purse and, inside the purse, a cigarette case. Deputy Pinson testified that within the cigarette case, and in his plain view, was a rolled-up marijuana joint. At this point, Deputy Pinson read Field
 
 *700
 
 her
 
 Miranda
 
 rights. After Field nodded that she understood her rights, Deputy Pinson asked whether the cigarette case belonged to her, wherein Field told the deputy that she forgot the joint was in the case.
 

 ¶ 5. Beyond the marijuana joint, the cigarette case held a plastic bag with a white rock substance, which was later proved to contain cocaine. Asked whether the white substance belonged to her, Field told Deputy Pinson that it did not. The officers then terminated the checkpoint as Field was taken into custody and transported to the Newton County Sheriffs Department.
 

 ¶ 6. On December 10, 2007, Field was found guilty of misdemeanor possession of marijuana and fined. As to the count of felony possession of cocaine, the jury was unable to reach a verdict, and the cause was continued until April 2008. At the April 2008 trial, Field testified that she and a group of friends had been camping along the Pearl River near Carthage, Mississippi when her van broke down. In an effort to arrange a tow, Field borrowed a truck from a friend and had started for Newton, Mississippi when she encountered the police checkpoint. While Field admitted that she consented to the search of the truck and that the cigarette case belonged to her, she continued to deny that the cocaine found in the cigarette case was hers, insisting that while camping other people had access to her purse.
 

 ¶ 7. During Deputy Pinson’s testimony, defense counsel made repeated objections concerning the witness’s revelation that Field was in possession of marijuana, arguing that any reference to this fact violated Mississippi Rule of Evidence 404(b). The court found that the evidence linking Field to the marijuana was admissible as its discovery led to the discovery of the cocaine. At this point, Field’s attorney moved to introduce evidence that the jury in the defendant’s first trial was unable to reach a verdict as to the charge of possession of cocaine. The circuit court denied this motion, holding that it was irrelevant. Field was found guilty of felony possession of cocaine and sentenced to serve eight years in the custody of the MDOC. She now appeals.
 

 DISCUSSION AND ANALYSIS
 

 I. Whether the circuit court erred in sentencing Field to the maximum sentence.
 

 ¶ 8. Field asserts that her sentence of eight years was disproportionate to the crime, considering both her age and status as a first-time offender. Urging that a sentence necessarily must be tailored to the offender and not simply the offense, Field argues that the circuit court erroneously believed it was required to sentence her to the maximum term of imprisonment, thus abdicating its role as a discretionary body. Field points to the circuit court judge’s expressed belief that he “had no choice ... but to sentence [Field] to a term of 8 years.” Further, Field argues that the sentence imposed falls within the reach of the Eighth Amendment’s prohibition against cruel and unusual punishment.
 

 ¶ 9. In turn, the State argues that only after careful deliberation of Field’s history of addiction, present employment, and existing family obligations did the circuit judge sentence Field to eight years. To this point, the judge’s “no choice” expression is reflective of all the facts involved in Field’s case rather than an abdication of discretion.
 

 ¶ 10. “Sentencing is within the complete discretion of the trial court and not subject to appellate review if it is within the limits prescribed by statute.”
 
 Wall v. State,
 
 718 So.2d 1107, 1114 (¶ 29) (Miss.1998) (quoting
 
 Hoops v. State,
 
 681
 
 *701
 
 So.2d 521, 537 (Miss.1996)). The consistent rule in Mississippi is that a sentence that does'not exceed the maximum term allowed by statute will not be disturbed on appeal.
 
 Fleming v. State,
 
 604 So.2d 280, 302 (Miss.1992). This Court, however, “will review a sentence that allegedly imposed a penalty disproportionate to the crime.”
 
 Nichols v. State,
 
 826 So.2d 1288, 1290 (¶ 10) (Miss.2002).
 

 ¶ 11. The United States Supreme Court has established a three-prong test for an Eighth Amendment proportionality analysis, wherein courts need to balance the following factors: (i) “the gravity of the offense and the harshness of the penalty”; (ii) “the sentences imposed on other criminals in the same jurisdiction”; and (iii) “the sentences imposed for commission of the same crime in other jurisdictions.”
 
 Solem v. Helm,
 
 463 U.S. 277, 290-92, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983). However, to the extent that there exists a guarantee of proportionality within the Eighth Amendment,
 
 Solem
 
 has been overruled.
 
 Harmelin v. Michigan,
 
 501 U.S. 957, 965, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991). The Mississippi Supreme Court has noted that, in light of
 
 Harmelin,
 
 the factors articulated in
 
 Solem
 
 are to apply “only when a threshold comparison of the crime committed to the sentence imposed leads to an inference of ‘gross disproportionality.’ ”
 
 Hoops,
 
 681 So.2d at 538 (citing
 
 Harmelin,
 
 501 U.S. at 1005, 111 S.Ct. 2680). Absent this initial showing, Mississippi appellate courts will not apply the three-prong test from
 
 Solem. Williams v. State,
 
 784 So.2d 230, 236 (¶ 15) (Miss.Ct.App.2000). “[A] sentence that is within the statutorily defined parameters of the crime, usually is upheld and is not considered cruel and unusual punishment.”
 
 Nichols,
 
 826 So.2d at 1290 (¶ 12). Thus, “outside the context of capital punishment, successful challenges to the proportionality of a particular sentence will be exceedingly rare.”
 
 Clowers v. State,
 
 522 So.2d 762, 765 (Miss.1988) (quoting
 
 Solem,
 
 463 U.S. at 289-90, 103 S.Ct. 3001).
 

 ¶ 12. Section 41-29-139(c)(1)(B) of the Mississippi Code Annotated (Rev.2005) provides that any person who knowingly or intentionally possesses a Schedule II drug, such as cocaine, in an amount of more than .10 gram but less than two grams shall be sentenced to imprisonment for not less than two years but not more than eight years. Thus, the maximum sentence permitted under section 41-29-139(c)(1)(B) for possession of cocaine is eight years. The circuit court sentenced Field to eight years, which clearly is within the statutory authority. Further, although Field claims that she was a first-time offender, it was noted at Field’s sentencing hearing that she had been previously charged three times for driving under the influence (DUI) (which is why she did not possess a driver’s license), and that she was addicted to marijuana and alcohol. Accordingly, we find no inference of “gross disproportionality.” This assignment of error is without merit.
 

 II. Whether the circuit court erred in refusing to give jury instruction D-2.
 

 ¶ 13. Field asserts that the circuit court erred in refusing to give jury instruction D-2, which reads:
 

 The Court instructs the jury that the Defendant is a competent witness in his own behalf and his testimony should not be disregarded simply because he is the Defendant. The Defendant is clothed with the same mantel of credibility as all other witnesses that have testified before you and in considering your verdict, you are to give his testimony the same weight and credibility you would any
 
 *702
 
 other witness in the light of the evidence.
 

 The Mississippi Supreme Court has held that “defendants are not entitled to an instruction which informs the jury that the defendant is a competent witness in his own behalf.”
 
 Baker v. State,
 
 391 So.2d 1010, 1012 (Miss.1980). The
 
 Baker
 
 court reasoned that:
 

 [The defendant’s] competency as a witness was evident by his appearance on the witness stand. If he had not been competent, he would not have been permitted to testify. There is no sound reason for a trial court to instruct a jury that any witness, including the defendant, is a competent witness. The jury, in its search for truth, is the sole judge of the worth and weight of the testimony of any witness, and should be free to make this judgment without instructions singling out or pointing to any particular witness stating such witness is competent.
 

 Id.
 

 ¶ 14. An instruction, similar in form to the one here, was deemed improper in
 
 Gates v. State,
 
 936 So.2d 335, 338 (¶ 9) (Miss.2006), because it singled out the testimony of a particular witness. The instruction in
 
 Gates
 
 read:
 

 The Court instructs the jury, that under the law, the Defendant is a competent witness in his own behalf, and that the Jury has no right to disbelieve him merely because he is a Defendant, and his testimony is entitled to such weight, faith, and credit as the Jury may think proper to give it.
 

 Id.
 
 at (¶ 8). In keeping with the reasoning articulated in
 
 Baker,
 
 the
 
 Gates
 
 court held that the defendant’s requested instruction informing the jury of his competency to testify was properly denied.
 
 Id.
 
 at (¶ 10) (citing
 
 Baker,
 
 391 So.2d at 1012). Accordingly, this assignment of error is without merit.
 

 III. Whether the circuit court erred in admitting evidence of other crimes.
 

 ¶ 15. We review a circuit court’s ruling on the admission or exclusion of evidence under an abuse of discretion standard.
 
 Lewis v. State,
 
 905 So.2d 729, 732 (¶ 7) (Miss.Ct.App.2004). “Where error involves the admission or exclusion of evidence, this Court ‘will not reverse unless the error adversely affects a substantial right of a party.’ ”
 
 Id.
 
 (quoting
 
 Whitten v. Cox,
 
 799 So.2d 1, 13 (¶ 27) (Miss.2000)).
 

 A. Whether the circuit court emd in admitting evidence that Field was in possession of marijuana.
 

 ¶ 16. Field asserts that the circuit court ordered that any evidence concerning her charge of possession of marijuana be excluded at trial. To this point, Field highlights a pretrial conference between the relevant parties and the circuit court wherein the court apparently instructed the parties that evidence of marijuana would not be discussed:
 

 Mr. Harris: Your Honor, just don’t want any issue of marijuana in this one.
 

 The Court: All right. The Court, of course, will instruct — not going to make ’em comment on it, but the Court has already been advised that the only issue is the cocaine. So I don’t know any other way to do it, meaning I don’t want to call attention to anything in front of the jury, so—
 

 Field argues that both the circuit court’s instruction and Mississippi Rule of Evidence 404(b) act to shield the defendant from any discussion about the marijuana. In December 2007, Field was found guilty of possession of marijuana; however, the
 
 *703
 
 jury was unable to reach a verdict with respect to the possession of cocaine charge. Field asserts that her possession of marijuana charge is evidence of a separate crime, distinct from the possession charge at issue.
 

 ¶ 17. Generally, “[e]videnee of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith.” M.R.E. 404(b). Our supreme court, however, has found that:
 

 Proof of another crime is admissible where the offense charged and that offered to be proved are so interrelated as to constitute a single transaction or occurrence or a closely related series of transactions or occurrences. Such proof of another crime is also admissible where it is necessary to identify the defendant, where it is material to prove motive,
 
 and there is an apparent relation or connection between the act proposed to be proved and that charged,
 
 where the accusation involves a series of criminal acts which must be proved to make out the offense, or where it is necessary to prove scienter or guilty knowledge.
 

 Jones v. State,
 
 920 So.2d 465, 474 (¶ 28) (Miss.2006) (emphasis added) (quoting
 
 Underwood v. State,
 
 708 So.2d 18, 31-32 (¶ 41) (Miss.1998)) (internal citation omitted). Furthermore, “the State has a ‘legitimate intérest in telling a rational and coherent story of what happened.’... Where substantially necessary to present to the jury ‘the complete story of the crime[,]’ evidence or testimony may be given even though it may reveal or suggest other crimes.”
 
 Id.
 
 at (¶ 29) (quoting
 
 Ballenger v. State,
 
 667 So.2d 1242, 1257 (Miss.1995)).
 

 ¶ 18. At trial, Deputy Pinson testified that after he secured Field’s consent to search the truck, he discovered a marijuana cigarette in a cigarette case in the defendant’s open purse. Following Field’s admission that the marijuana was hers, Deputy Pinson looked inside the cigarette case and discovered a white rock substance inside a plastic bag. Defense counsel moved repeatedly for a mistrial stressing that the marijuana charge and the cocaine charge were two distinct crimes.
 

 ¶ 19. The circuit court, in considering the defense’s motion, found that reference to the fact that marijuana was found in the truck was necessary to provide the jury with a complete story of the crime. Deputy Pinson’s discovery of the marijuana justified his search of Field’s cigarette case. Even if the marijuana showed evidence of a separate crime, its introduction at trial was necessary to provide context for Deputy Pinson’s ultimate discovery of the cocaine. “Relevant evidence is that which makes more likely the existence of a fact
 
 that is of consequence to the proceedings.” Hunt v. State,
 
 877 So.2d 503, 511 (¶ 39) (Miss.Ct.App.2004) (emphasis added) (citing M.R.E. 401). As the marijuana and the cocaine were in the same container -within Field’s purse, the discovery of the marijuana led to Deputy Pinson’s discovery of the cocaine at issue in the second trial. Further, Field’s admission that the marijuana was hers demonstrated that it was more likely that the cocaine was also Field’s as she had control of the container in which both drugs were discovered. Accordingly, we find no abuse of discretion by the circuit court judge in allowing this evidence to be introduced to the jury.
 

 B. Whether the circuit court erred in refusing to admit evidence that the jury in Field’s prior trial was unable to reach a verdict.
 

 ¶ 20. In her previous trial, Field was convicted of possession of marijuana; however, the jury was unable to reach a
 
 *704
 
 verdict with respect to the cocaine charge. Field asserts that because the circuit court allowed the introduction of her possession of marijuana and her subsequent conviction which resulted from the previous trial,
 
 [1]
 
 the court “opened the door” to the introduction of evidence that the first trial resulted in a mistrial as to the cocaine charge.
 

 ¶ 21. Evidence, which is otherwise inadmissible, may be properly presented where the defendant has “opened the door.”
 
 Gunnell v. State,
 
 750 So.2d 1284, 1286 (¶ 12) (Miss.Ct.App.1999) (citing
 
 Washington v. State,
 
 726 So.2d 209, 216 (¶ 34) (Miss.Ct.App.1998)). Thus, in a general sense, “a defendant cannot complain of the evidence which he himself brings out.”
 
 Weaver v. State,
 
 996 So.2d 142, 145-46 (¶ 11) (Miss.Ct.App.2008) (quoting
 
 Pruitt v. State,
 
 807 So.2d 1236, 1241 (¶ 14) (Miss.2002)). In this light, Field urges that because the circuit court admitted evidence of marijuana possession, it “opened the door” to further evidence regarding Field’s previous trial.
 

 ¶ 22. In the instant case, it was the State that “opened the door” to evidence concerning the possession of marijuana. Further, the circuit court properly held that the evidence of marijuana possession fell neatly within the exceptions of Mississippi Rule of Evidence 404(b). However, we fail to see how evidence, which was admitted to provide the jury with a better understanding of why Deputy Pinson searched the defendant’s cigarette case, “opened the door” to evidence of a hung jury in Field’s previous trial. The fact remains that evidence must be relevant before a eourt can address the issue of its admissibility. “Under Rule 402 [of the Mississippi Rules of Evidence], evidence ‘which is not relevant is not admissible.’ ”
 
 King v. State,
 
 580 So.2d 1182, 1189 (Miss.1991). It was for the second jury to determine the credibility of all the evidence and testimony offered. Evidence that an earlier jury was unable to reach a decision is simply not relevant as it does not make it more or less likely that Field knowingly possessed the drugs in question. Instead, admission of this evidence would only frustrate or improperly influence the deliberations of the later jury. This assignment of error is without merit.
 

 IV. Whether the search of the truck that Field was driving was reasonable.
 

 ¶ 23. The State argues that because Field did not designate the search of the truck as an issue in her “statement of the issues,” she is precluded, under Mississippi Rule of Appellate Procedure 28(a)(3), from arguing this point. Presumably out of caution, however, the State did address the merits of this issue in its brief. Field also addresses this issue, albeit only in the body of her brief. In this light, and considering the constitutional question implicated, we excuse the briefing error as harmless and move to discuss the merits of her argument.
 

 ¶ 24. Field contends that because the police checkpoint did not comport with the written policy directives of the Newton County Sheriffs Department, any search emanating from the checkpoint was invalid. Specifically, Field asserts that policy requires the presence of a supervisor to oversee the checkpoint and that three sheriffs department officers participate. Because neither Deputy Pinson nor Officer Pinson held the necessary authority to oversee the checkpoint, and because they were the only two officers present, Field
 
 *705
 
 argues that both the checkpoint and subsequent search of the truck were invalid.
 

 ¶ 25. A seizure within the meaning of the Fourth Amendment occurs when a vehicle is stopped at a police checkpoint.
 
 Mich. Dep’t of State Police v. Sitz,
 
 496 U.S. 444, 450, 110 S.Ct. 2481, 110 L.Ed.2d 412 (1990) (citing
 
 United States v. Martinez-Fuerte,
 
 428 U.S. 543, 556, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976)). The fundamental question then becomes whether such seizures are reasonable.
 
 Id.
 
 The reasonableness of a given police checkpoint is measured by balancing its intrusion on an individual’s Fourth Amendment interests against the checkpoint’s promotion of a “legitimate governmental interest[ ].”
 
 Delaware v. Prouse,
 
 440 U.S. 648, 654, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979). To this end, “the Fourth Amendment requires that a seizure must be based on specific, objective facts indicating that society’s legitimate interests require the seizure of the particular individual, or that the seizure must be carried out pursuant to a plan embodying explicit, neutral limitations on the conduct of individual officers.”
 
 Brown v. Texas,
 
 443 U.S. 47, 51, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979). Additionally, the United States Supreme Court has held that fixed checkpoints, compared to roving patrols, need be viewed in a different light because “[a]t traffic checkpoints the motorist can see that other vehicles are being stopped, he can see visible signs of the officers’ authority, and he is much less likely to be frightened or annoyed by the intrusion.”
 
 United States v. Ortiz,
 
 422 U.S. 891, 894-95, 95 S.Ct. 2585, 45 L.Ed.2d 623 (1975).
 

 1126. Field alleges that the checkpoint was invalid solely because the officers involved failed to adhere to departmental policy. To this point, she relies on a decision by the United States Court of Appeals for the Sixth Circuit which concluded that, where policy directives for checkpoints exist, they should be followed.
 
 United States v. Huguenin,
 
 154 F.3d 547 (6th Cir.1998). We find that the application of this rule to the present facts is misplaced. In
 
 Huguenin,
 
 the appellate court held that a checkpoint set up under the pretext of ensuring traffic safety, but actually designed to intercept narcotics, was unreasonable and ultimately unconstitutional.
 
 Id.
 
 at 553. With respect to procedural guidance, the court found the checkpoint was administered not under departmental policy, but rather by the individual officers in the field who were free to decide which motorists to stop and where and when the checkpoint would be set up.
 
 Id.
 
 at 562-63.
 

 ¶ 27. Here, Deputy Pinson testified that the legitimate purpose of the checkpoint was to check for valid driver’s licenses. The checkpoint was set up during daylight hours in a straightaway, and Deputy Pinson testified that the plan was to stop every vehicle, without exception, that they encountered at the checkpoint. Additionally, the checkpoint was authorized by Newton County Chief Deputy Sheriff Walker, a department supervisor. This Court has consistently held that the State does arguably have an interest in ensuring that drivers are properly licensed.
 
 Johnston v. State,
 
 853 So.2d 144, 146 (¶ 5) (Miss.Ct.App.2003) (citing
 
 Briggs v. State,
 
 741 So.2d 986, 989 (¶ 8) (Miss.Ct.App.1999)). A checkpoint set up for the specific purpose of checking driver’s licenses, valid tags, and insurance serves a legitimate public safety purpose; there fore, it does not violate a defendant’s right of protection against unreasonable searches and seizures.
 
 Hampton v. State,
 
 966 So.2d 863, 866 (¶ 13) (Miss.Ct.App.2007). Further, the departmental policies were established to ensure safety in conducting a legitimate checkpoint. As already noted, the checkpoint was set up in
 
 *706
 
 daylight, on a straight thoroughfare, and there was a definitive plan established by the officers for checking vehicles. Field’s stop was conducted in a safe and reasonable manner. Thus, we find that any minor deviation from the departmental policy, in this instance, was reasonable under the circumstances and did not violate Field’s constitutional rights under the Fourth Amendment. Accordingly, we find that this assignment of error is without merit.
 

 ¶ 28. THE JUDGMENT OF THE CIRCUIT COURT OF NEWTON COUNTY OF CONVICTION OF POSSESSION OF COCAINE AND SENTENCE OF EIGHT YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO NEWTON COUNTY.
 

 KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ., CONCUR.
 

 [1]
 

 . Although the circuit court judge did rule that Field’s conviction on the possession of marijuana charge could be admitted, this evidence was never brought before the jury.