CARLTON, J.,
for the Court:
¶ 1. A DeSoto County jury convicted Darnell Wilson of grand larceny, felony fleeing, and simple assault against a law enforcement officer following a trial in the DeSoto County Circuit Court. The circuit court sentenced Wilson as a habitual offender to three concurrent sentences of life imprisonment without the possibility of parole in the custody of the Mississippi Department of Corrections (MDOC). Aggrieved by the jury verdict and judgment of the circuit court, Wilson appeals his convictions and sentences. The Mississippi Office of Indigent Appeals represents Wilson.
¶ 2. Wilson’s attorney filed a brief pursuant to Lindsey v. State, 939 So.2d 743, 748 (¶ 18) (Miss.2005), asserting that after diligently searching the procedural and factual history of Wilson’s case and also scouring the record, he found no arguable issues for appeal to present to this Court in good faith. Following the procedure set forth in Lindsey, Wilson filed a pro se brief on his own behalf, raising seven assignments of error. Upon review, this Court requested supplemental briefing from both parties regarding the issue of the constitutionality of Wilson’s sentence and requested that the parties address whether Wilson’s sentence reached the threshold necessitating a proportionality analysis by the trial judge. This Court has now fully examined the record and issues raised by Wilson pro se, and we find no meritorious issues. Therefore, we affirm Wilson’s convictions and sentences.
FACTS
¶ 3. On August 21, 2009, Kevin Licht, an employee at Kohl’s Department Store’s loss-prevention department in Southaven, Mississippi, observed what he believed to be suspicious activity in the store. At approximately 4:00 p.m., Licht began to track an individual via surveillance camera from inside the store’s loss-prevention office. Licht identified the individual as Wilson.
¶ 4. Licht called the Southaven Police Department, requesting assistance. Licht stated that he observed Wilson gather merchandise and go to the west side of the store and stuff the merchandise into what appeared to be a black garbage bag. Wilson then left the store through the west doors. Licht followed Wilson and asked him to stop. Wilson refused.
¶ 5. When the police arrived on the scene, Wilson began to run, dropping the garbage bag containing the merchandise. Licht concluded that the total value of everything taken by Wilson from Kohl’s amounted to $934.
¶ 6. Officer Nicholas Kennedy of the Southaven Police Department was dispatched to Kohl’s in response to Licht’s call. When Officer Kennedy arrived on the scene, he set up a perimeter and waited until he could get a visual on someone leaving the store. Officer Kennedy eventually observed Wilson leaving the store. Officer Kennedy stated that when Wilson left the store, he was carrying a large black bag. Wilson dropped the bag when Officer Kennedy made contact with him, and Wilson began running to his vehicle in the Kohl’s parking lot.
¶ 7. When Officer Kennedy arrived at Wilson’s vehicle, other police officers had also arrived at the scene. Officer Kennedy observed Wilson drive the vehicle “backwards and forwards several times,” and Officer Kennedy testified that the oth *855 er officers were trying to stop the vehicle. When Wilson failed to comply with the officers’ commands to stop and exit the vehicle, Officer Kennedy shot Wilson with a taser gun. At that point, Wilson drove off in the vehicle.
¶ 8. Officer Jeremy Iverson of the Sou-thaven Police Department was also called to the scene. During the encounter in the Kohl’s parking lot, Officer Iverson pulled his vehicle within two feet of Wilson’s vehicle. Officer Iverson exited his vehicle and went to the driver’s side of Wilson’s vehicle in an attempt to stop Wilson and force him and a passenger to exit the vehicle. Wilson then put the vehicle in reverse and hit Officer Iverson’s vehicle. He then put his car in drive, and hit a civilian vehicle. While Wilson drove his vehicle back and forth, Officer Iverson reached his arm into the car and attempted to remove the keys from the ignition. Wilson then drove away in his vehicle, with police officers in pursuit.
¶ 9. As a result of the incident, Officer Iverson testified that he experienced pain and soreness from his shoulder to his fingertips. Officer Iverson went to Baptist Memorial Hospital for treatment, where doctors diagnosed him with a shoulder strain. Officer Steven Raines, another officer at the scene, provided testimony which largely corroborated the testimony provided by Officers Kennedy and Iverson.
¶ 10. Police officers ultimately apprehended Wilson on Queen Elizabeth Drive in Memphis, Tennessee, after following Wilson’s vehicle. While in pursuit of Wilson, police officers observed Wilson run several stop lights and hit another vehicle. Officer Donald Burr testified that when he arrived on the scene, two individuals were being detained — Wilson and his brother, the passenger in Wilson’s vehicle. Officer Burr collected some clothes from the back of the vehicle.
¶ 11. Wilson’s mother, Eunice Wilson, testified in her son’s defense. She stated that after the shoplifting incident, she received a letter from Kohl’s, indicating that there was a $225 penalty for her son’s shoplifting from the store. Eunice claims she paid the entire amount. She also admitted that the letter indicated that the money requested by Kohl’s was for a civil penalty, and not a payment for the merchandise itself. Trinity Bodkins, a loss prevention manager for Kohl’s, also testified and confirmed that the $225 charge was to pay for other expenses incurred and in no way reflected the value of the items taken in the shoplifting incident.
¶ 12. Wilson’s brother, Randolph Wilson, also testified in Wilson’s defense, stating that he was with Wilson on the day in question. Randolph claimed that the police officers were assaulting Wilson, and not the other way around.
¶ 13. Wilson took the stand and testified in his own defense. He admitted to shoplifting from Kohl’s, and he testified that the reason he fled from the police was to return his mother’s vehicle to her so that the police officers would not “tear it up.” Wilson also admitted that he continued to drive away after repeatedly being ordered to stop by the police officers, explaining: “It was only shoplifting. It wasn’t murder, honey.” Wilson claimed that he dated a police officer for seventeen years, so he knew “what’s right and what’s not” regarding when to follow orders from police officers.
¶ 14. Wilson testified that as a result of being shot with the taser gun, his ability to drive was affected, which led to his sideswiping another vehicle while driving away from the police officers. Wilson also denied assaulting Officer Iverson, claiming Officer Iverson should not have continued to try to arrest him.
*856 ¶ 15. On cross-examination, Wilson boasted that he had shoplifted numerous times in the past. Wilson stated that whenever he shoplifted, he always made sure he stole less than $500 worth of merchandise, with the exception of one theft where he shoplifted merchandise worth more than $500. Wilson also openly testified to being a prostitute and, without any questioning on the matter, explained his prior convictions for aggravated robbery.
¶ 16. At the conclusion of the trial, the circuit judge granted the requested lesser-offense jury instructions for petit larceny, resisting arrest, and misdemeanor fleeing. The jury ultimately returned a verdict of guilty on all three indicted counts (grand larceny, felony fleeing, and simple assault against a law enforcement officer).
¶ 17. The circuit judge sentenced Wilson as a habitual offender to three concurrent sentences of life imprisonment without the possibility of parole in the custody of the MDOC, pursuant to Mississippi Code Annotated section 99-19-83 (Rev. 2007). The circuit court, on its own motion, performed the Eighth Amendment proportionality analysis and determined that the sentence imposed on Wilson was not constitutionally disproportionate. Field v. State, 28 So.3d 697, 701 (¶ 11) (Miss.Ct.App.2010). Wilson filed both a motion for a new trial and a motion for a judgment notwithstanding the verdict (JNOV). The circuit judge denied these motions. On July 30, 2010, feeling aggrieved by the verdict of the jury and the sentence of the circuit court, Wilson filed a notice of appeal. This Court later ordered supplemental briefing from both parties on the issue of the constitutionality of Wilson’s sentence. Upon review, we find no error.
DISCUSSION
¶ 18. In Lindsey, the Mississippi Supreme Court implemented the following procedure to govern cases in which counsel for indigent defendants find no arguable issues to present on appeal:
(1) Counsel must file and serve a brief in compliance with Mississippi Rule of Appellate Procedure 28(a)(l)-(4), (7)....
(2) As part of the brief filed in compliance with Rule 28, counsel must certify that there are no arguable issues supporting the client’s appeal, and he or she has reached this conclusion after scouring the record thoroughly, specifically examining: (a) the reason for the arrest and the circumstances surrounding arrest; (b) any possible violations of the client’s right to counsel; (c) the entire trial transcript; (d) all rulings of the trial court; (e) possible prosecutorial misconduct; (f) all jury instructions; (g) all exhibits, whether admitted into evidence or not; and (h) possible misapplication of the law in sentencing.
(3) Counsel must then send a copy of the appellate brief to the defendant, inform the client that counsel could find no arguable issues in the record, and advise the client of his or her right to file a pro se brief.
(4) Should the defendant then raise any arguable issue or should the appellate court discover any arguable issue in its review of the record, the court must, if circumstances warrant, require appellate counsel to submit supplemental briefing on the issue, regardless of the probability of the defendant’s success on appeal.
(5) Once briefing is complete, the appellate court must consider the case on its merits and render a decision.
Lindsey, 939 So.2d at 748 (¶ 18) (footnotes and internal citations omitted).
¶ 19. Wilson’s counsel complied with the procedures set forth in Lindsey. Wil *857 son’s counsel filed a brief stating that he examined the entire record, including
(a) the reason for the arrest and the circumstances surrounding the arrest of Darnell Wilson; (b) any possible violations of Wilson’s right to counsel; (c) the entire trial transcript and content of the record; (d) all rulings of the trial court; (e) possible prosecutorial misconduct; (f) all jury instructions; (g) all exhibits, whether admitted into evidence or not; (h) possible misapplication of the law in sentencing; ... (i) the indictment and all the pleadings in the record; ... [;] any possible ineffective assistance of counsel issues; (k) whether the verdict was supported by the overwhelming weight of the evidence; (l) whether Wilson was properly sentenced as a habitual offender; (m) whether the trial court’s proportionality analysis was proper under the Eighth Amendment of the United States Constitution; (n) whether Wilson’s sexual orientation was in any wa[y] a factor [in the] charges being brought, his sentence as a habitual offender, or the ultimate sentence; [and] (o) whether the jury erred in not finding Wilson guilty of all the lesser offenses.
¶ 20. Further, Wilson’s appellate counsel confirms that he informed Wilson that he found no arguable issues in the record and that he informed Wilson of his right to file a pro se brief. Wilson’s counsel also requested for us to allow additional time for Wilson to file such a brief, which we granted. See Lindsey, 9B9 So.2d at 748 (¶ 18). Wilson then filed a pro se brief on his own behalf, asserting several errors in the circuit court, specifically that the circuit court erred in sentencing him as a habitual offender pursuant to section 99-19-88.
¶ 21. However, after reviewing the record, we find that the State provided sufficient evidence showing no error by the trial court in sentencing Wilson as a habitual offender pursuant to section 99-19-83. The record shows that Wilson met the following statutory requirements for such sentencing: Wilson had been convicted twice previously of felony crimes separately brought and arising out of separate incidents at different times; Wilson had been sentenced to and served separate terms of one year or more in the custody of the Tennessee Department of Corrections; and one or more of those felonies constituted a crime of violence, pursuant to section 99-19-88. At Wilson’s sentencing hearing, the State also provided certified documents from the State of Tennessee reflecting Wilson’s numerous previous convictions, and the trial court acknowledged that many of Wilson’s prior convictions constituted crimes of violence.
¶22. The record also shows that the circuit court provided an on-the-record proportionality analysis when sentencing Wilson for each count. However, the court did not address each Solem factor in its proportionality analysis for each offense. In evaluating whether the trial court’s proportionality analysis was sufficient or even necessary, this Court, on its own motion, requested supplemental briefing from both parties pertaining to the issue of the constitutionality of Wilson’s sentence. Specifically, this Court asked the parties to address the following issues: (1) whether or not in this case a threshold comparison of Wilson’s crime to the sentence imposed meets the inference of gross disproportionality as explained by this Court in Field v. State, 28 So.3d 697, 701 (¶ 11) (Miss.Ct.App.2010), and (2) if Wilson’s sentence met the threshold inference, whether the trial court’s on-the-record proportionality analysis sufficiently satisfied the requirements set forth in Field and Solem to support concurrent life sentences imposed for each of Wilson’s convic *858 tions. Solem v. Helm, 463 U.S. 277, 290-92, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983).
¶ 23. We recognize that “[sentencing is within the complete discretion of the trial court and not subject to appellate review if it is within the limits prescribed by statute.” Wall v. State, 718 So.2d 1107, 1114 (¶ 29) (Miss.1998) (quoting Hoops v. State, 681 So.2d 521, 537 (Miss.1996)). We further acknowledge that the supreme court has held that a sentence that does not exceed the maximum term allowed by statute will not be disturbed on appeal. Fleming v. State, 604 So.2d 280, 302 (Miss.1992). This Court, however, “will review a sentence that allegedly imposed a penalty ... disproportionate to the crime.” Nichols v. State, 826 So.2d 1288, 1290 (¶10) (Miss.2002).
¶ 24. We further recognize that Solem has been overruled to the extent that its holding found a guarantee of proportionality within the Eighth Amendment. Harmelin v. Michigan, 501 U.S. 957, 965, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991). Under current precedent established by the Mississippi Supreme Court, absent an initial threshold showing of gross disproportionality, Mississippi appellate courts will not apply the three-prong test from Solem. See Hoops, 681 So.2d at 538 (citing Harmelin, 501 U.S. at 1005, 111 S.Ct. 2680). If the threshold showing of gross-proportionality has been met, then courts apply the following three-prong proportionality balancing test as set forth in Solem: (1) “the gravity of the offense and the harshness of the penalty”; (2) “the sentences imposed on other criminals in the same jurisdiction”; and (3) “the sentences imposed for commission of the same crime in other jurisdictions.” Solem, 463 U.S. at 292, 103 S.Ct. 3001. “[A] sentence that is within the statutorily defined parameters of the crime[ ] usually is upheld and [is] not considered cruel and unusual punishment.” Nichols, 826 So.2d at 1290 (¶ 12). Thus, “outside the context of capital punishment, successful challenges to the proportionality of a particular sentence will be exceedingly rare.” Clowers v. State, 522 So.2d 762, 765 (Miss.1988) (quoting Solem, 463 U.S. at 289-90, 103 S.Ct. 3001). In Smallwood v. State, 930 So.2d 448, 451-52 (¶ 11) (Miss.Ct.App.2006), this Court acknowledged that “Mississippi appellate courts recognize the broad authority of the [Legislature and trial courts in the area of sentencing” and that appellate courts “will not engage in an extended proportionality analysis where the sentence is not manifestly disproportionate.” (Citation omitted).
¶ 25. In the present case, the circuit judge sentenced Wilson as a habitual offender pursuant to section 99-19-83 to three concurrent sentences of life imprisonment without the possibility of parole in the custody of the MDOC. Section 99-19-83 provides:
Every person convicted in this state of a felony who shall have been convicted twice previously of any felony or federal crime upon charges separately brought and arising out of separate incidents at different times and who shall have been sentenced to and served separate terms of one (1) year or more in any state and/or federal penal institution, whether in this state or elsewhere, and where any one (1) of such felonies shall have been a crime of violence shall he sentenced to life imprisonment, and such sentence shall not be reduced or suspended nor shall such person be eligible for parole or probation.
(Emphasis added). The circuit court, on its own motion, performed the Eighth Amendment proportionality analysis and determined that the sentence imposed on Wilson was not constitutionally disproportionate. See Field, 28 So.3d at 701 (¶ 11). *859 The court noted that without any habitual sentencing, Wilson would have faced up to twenty years in the custody of the MDOC, were his felony convictions to run consecutively. The circuit judge proceeded to make findings on the record where he acknowledged Wilson’s lengthy history of felony and misdemeanor convictions and Wilson’s age (44 years old), and determined that the appropriate sentence for Wilson, as a habitual offender, was life imprisonment on each of the three counts, with all three sentences to run concurrently. Although the circuit court did not specifically use the words “grossly disproportionate,” the judge found that ‘Wilson’s sentence is not disproportionate to [that of] a person with a similar criminal history who stands before the court at [his] age with his history charged with crimes that likewise include ... a conviction for a crime of violence.” Since the circuit judge found no inference of gross disproportion-ality in Wilson’s sentence, the court was not required to apply the Solem factors. See Hoops, 681 So.2d at 521; Field, 28 So.3d at 701 (¶ 11).
¶ 26. In examining gross dispro-portionality of sentences, we turn to Rummel v. Estelle, 445 U.S. 263, 284-85, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980), wherein the United States Supreme Court found that the defendant’s sentence was not disproportionate nor in violation of the Eighth Amendment where the defendant was sentenced under a recidivist statute to life imprisonment for his third nonviolent felony conviction, and the total loss for the three property-related crimes amounted to less than $250. The Rummel Court explained that:
The purpose of a recidivist statute ... [is] to deter repeat offenders and, at some point in the life of one who repeatedly commits criminal offenses serious enough to be punished as felonies, to segregate that person from the rest of society for an extended period of time. This segregation and its duration are based not merely on that person’s most recent offense but also on the propensities he has demonstrated over a period of time during which he has been convicted of and sentenced for other crimes.
Id. at 284. In light of Rummel, we find no abuse of discretion in the circuit court’s determination that Wilson’s sentence was not grossly disproportionate to the crimes he committed. See also Mosley v. State, 104 So.3d 839, 840-842 (¶¶ 10-11) (Miss.2012) (supreme court found no inferential showing of gross disproportionality in defendant’s sentence as a habitual offender to a total of 126 years in the custody of the MDOC for the convictions of selling cocaine, methamphetamine, and marijuana).[1]
¶ 27. After an examination of Wilson’s pro se supplemental brief and a thorough review of the record in this case, we find that Wilson raises no arguable issues in support of his appeal. Wilson received a life sentence for each of his convictions in compliance with section 99-19-83; thus, we find Wilson’s sentences fall within the statutory limits. See Wall, 718 So.2d at 1114 (¶ 29) (“Sentencing is ... not subject to appellate review if it is within the limits prescribed by statute.”). Therefore, we affirm Wilson’s convictions and sentences. See Bradshaw v. State, 6 So.3d 1123, 1125 (¶ 7) (Miss.Ct.App.2009).
¶ 28. THE JUDGMENT OF THE CIRCUIT COURT OF DESOTO COUNTY OF CONVICTION OF COUNT I, GRAND LARCENY, AND SENTENCE *860 OF LIFE IMPRISONMENT; COUNT II, FELONY FLEEING, AND SENTENCE OF LIFE IMPRISONMENT; AND COUNT III, SIMPLE ASSAULT ON A LAW ENFORCEMENT OFFICER, AND SENTENCE OF LIFE IMPRISONMENT, WITH THE SENTENCES IN COUNTS I, II, AND III TO BE SERVED CONCURRENTLY, ALL AS A HABITUAL OFFENDER IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT ELIGIBILITY FOR PAROLE OR PROBATION, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO DESOTO COUNTY.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, MAXWELL AND FAIR, JJ., CONCUR. JAMES, J., NOT PARTICIPATING.

. This opinion has not been released for publication in the permanent law reports and is subject to revision or withdrawal.